ROBINSON et al., *Appellants*, v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY.

**Contracts**: OFFER BY LETTER: ACCEPTANCE. To make a binding contract, the offer and the acceptance must correspond in every particular. If the offer be by letter, the acceptance must be communicated in some way, either actually or constructively, without unreasonable delay. Express notice of acceptance can only be dispensed with when it is apparently not contemplated, and some other act is equally clear and unequivocal.

*Appeal from Carroll Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

This was a suit to recover an over-charge upon a contract alleged to have been made with defendant for transportation of corn from Hill's Landing, Missouri, to New Orleans, Louisiana.

The facts, as developed at the trial, were substantially as follows: Prior to the 16th day of May, 1876, plaintiff Robinson had had an interview and also correspondence with Bird, general freight agent of the defendant company, in relation to rates of freight on contemplated shipments of corn to be made over defendant's road. On the day named Robinson wrote that he and his associates were about ready to begin shipping, and asking for the very lowest rate through to New Orleans from Carrollton, Eugene City, Norborne, and points on the Missouri river between Waverly and DeWitt. Upon the receipt of this letter Bird made an arrangement with the St. Louis and New Orleans Packet Company for transportation from St. Louis to New Orleans at the rate of 11¼ cents per 100 pounds, and on the 18th sent plaintiffs a letter naming 26¼ cents per 100 pounds, as the rate from Richmond & Lexington Junction, a point on defendant's road, to New Orleans. This rate was fixed with reference to the agreement with the packet

company. The letter was received on the 19th or 20th day of May; but was never answered by them. Without further communication with Bird, plaintiffs, on the 29th day of May, commenced shipping corn to New Orleans from Hill's Landing, a point on the Missouri river. The shipments were made by the steamer Ida Stockton from Hill's Landing to DeWitt and thence over defendant's road to St. Louis, its terminus. At this time defendant had an arrangement with the steamer Gate City, then plying between Waverly and DeWitt, by which defendant was to carry from DeWitt to St. Louis all freights from certain local points for the same rate that the boat charged from such points to DeWitt. There was no direct arrangement between defendant and the Ida Stockton, which was running at that time between the same points; but by an arrangement between the captains of the boats, they both delivered freight to the railroad at DeWitt on the same terms. Neither boat was authorized to make through rates for defendant beyond St. Louis. At the time of making the first shipment, Robinson exhibited Bird's letter of the 18th day of May to the clerk of the Ida Stockton, and asked for a through bill of lading to New Orleans. Without communicating with Bird, or in any way obtaining the consent of defendant, the clerk issued a through bill at the rate of freight named in Bird's letter, but consigning the corn to the care of the Mississippi Valley Transportation Company at St. Louis, to be by this company transported from St. Louis to New Orleans. Defendant had no arrangement with this company as to rates. The corn was carried by defendant to St. Louis, and was there delivered to the Mississippi Valley Transportation Company, from whom defendant collected fifteen cents per 100 pounds for freight. The Mississippi Valley Transportation Company then completed the carriage to New Orleans; but required the consignees at that place to pay twenty-seven cents per 100 pounds before they would deliver the corn. This the consignees did under protest. The excess of freights upon

all the shipments amounted to $1,711.18. This suit was instituted to recover this sum. The circuit court gave judgment for defendant, and plaintiffs appealed.

*Hale & Eads* for appellants.

No formal acceptance of Bird's terms was necessary by the plaintiffs, further than their offer to ship the grain. A shipper applies to a railroad company for rates of freight from and to given points; the railroad company replies giving its rates of freight, the only acceptance necessary on the part of the shipper is to deliver the freight to the company at the points of shipment named in the correspondence. *Lungstrass v. German Ins. Co.*, 48 Mo. 201. The letters of Robinson to Bird, and Bird's replies must be construed with reference to the previous conversation between them, the situation of the contracting parties and the object and intention of Robinson, which was known to Bird both through conversations and letters. Robinson calls for a through rate from Richmond & Lexington Junction on the line of defendant's road, and points east as far as DeWitt; naming Norborne, Carrollton, Eugene City and landings on the Missouri river reached by defendant's road, through their boats running from DeWitt to landings not above Waverly. Bird replies, giving a through rate to New Orleans from points east of Richmond & Lexington Junction, without making any distinction between river and railroad points. This authorized Robinson to conclude that he meant a through rate from the points named in his letter east of Richmond & Lexington Junction.

*Wells H. Blodgett* and *George S. Grover* for respondent.

There was no contract between the parties. The rate of freight offered by Bird to the plaintiffs, in his letter of May 18th, was never accepted by them. They asked for a rate from Carrollton, Eugene City and Norborne, all sta-

tions on the defendant's line, and points on the Missouri river between Waverly and DeWitt to New Orleans. The reply gave them a rate from Richmond & Lexington Junction, a different point on defendant's line from those mentioned in plaintiff's letter. After a delay of nine days, with ample facilities for telegraphic and daily mail communication, and no reply made by them to Bird's letter, they deliver to a carrier by water, having no authority to make contracts over defendant's railroad, at Hill's Landing, a point not previously named by Bird, and not on defendant's line, but on the Missouri river, a lot of corn, under a contract with the first carrier, and not with defendant, for transportation through to New Orleans. The two parties never assented to the same thing at any time, nor were they ever agreed upon the same subject matter, nor did the defendant profit by any of the stipulations of the alleged contract. The testimony shows that plaintiffs themselves selected the carrier between St. Louis and New Orleans, and that they chose one with whom defendant had no contract, whose rates were unknown to it, and over whose actions it had no control, and who collected and retained all the excess above the rate named by the first carrier. Parsons on Contracts, (6 Ed.) 475; *Eads v. Carondelet.* 42 Mo. 117; *Bruner v. Wheaton,* 46 Mo. 366; 48 Mo. 207.

SHERWOOD, C. J.—The vital and controlling question in this case is whether there was a contract between the parties. The bills of lading under which the corn was shipped on the Ida Stockton from Hill's Landing, a point on the Missouri river, were not signed by the defendant, nor by any one for it. The letter of Bird, general freight agent of defendant, dated May 18th, 1876, gave plaintiffs a rate from Richmond & Lexington Junction, a point on defendant's road, to New Orleans. Nine days went by and no reply was made by plaintiffs to this letter, though abundant opportunities existed, both by telegraph and

otherwise, whereby plaintiffs could have signified their acceptance or rejection of the offer made by Bird. As no acceptance of Bird's offer took place, the minds of the plaintiffs and of the defendant never met and concurred. "There is no contract, unless the parties thereto assent; and they must assent to the same thing in the same sense." 1 Parsons Contr., 475 ; *Eads v. Carondelet*, 42 Mo. 113. A binding contract can only occur when. the offer made is met by an acceptance which corresponds with the offer made in every particular. There is no contract until acceptance of the offer by the party receiving it, is in some way actually or constructively communicated to the party making the offer. *Hebb's case*, Law Rep., 4 Eq. Cas. 9. And.it must be communicated to the other party without unreasonable delay. *Bruner v. Wheaton*, 46 Mo. 366. And "express notice of acceptance can only be dispensed with when apparently not contemplated, and some other act of acceptance is equally clear and unequivocal." *Lungstrass v. German Ins. Co.*, 48 Mo. 201. Tested by these rules we must hold, as did the circuit court, that no contract was made and consummated between the parties, and, therefore, judgment affirmed. All .concur, except RAY, J., not sitting.