ALLEN *et al., Appellants,* v. CHOUTEAU, *Appellant.*

102   309
108    76
102   309
114    69
102   309
77a   241
102   309
84a   610
102   309
91a   466
102   309
174   ³183
j97a  ²102

1.  **Contract**: ACCEPTANCE OF PROPOSITION : PLEADING.  Defendant in a letter to A., dated December 6, 1877, stated "that if you will pay all taxes now due on the lands covered by my suit pending in the supreme court of Missouri in the case between you and myself and others and lying in the counties of Stoddard and Scott, and I shall obtain a good title to said lands or any of them by the present litigation, I will refund to you the amount paid and interest on such lands as I shall obtain a good title to.  If this is agreed to the agreement can be fully drawn up and signed." *Held*, in an action for money paid for the taxes, that a petition which avers that after the receipt of the letter and influenced to do so by it and relying on the promise therein made, and with the knowledge of defendant, A. paid the taxes, sufficiently alleges the acceptance of defendant's offer.

2.  **Defective Petition**: AIDER BY ANSWER.  A petition will be aided by averments in the answer.

3.  **Evidence**: DEPOSITION TAKEN IN ANOTHER CASE.  A deposition taken in a case may be read in another suit, between the same parties relating to the same subject-matter.

4.  ———— : ————.  The foregoing rule will apply to the deposition of one of the parties since deceased, and it is immaterial that persons were parties to the former suit who were not parties to the second suit.

5.  ———— : ————.  The deposition of the deceased party having been introduced by plaintiffs in the second suit, defendant was properly allowed to testify in his own behalf but only as to matters embraced in the deposition.

6.  **Contract**: AGREEMENT TO REFUND TAXES.  Defendant's undertaking by his letter was to pay the taxes only on his own interest in the lands to which he got title, and not on those bought in for others at the sale under the judgment in the supreme court.

7.  ———— : ————.  The proposition in defendant's letter to pay the taxes "*now due*" (December 6, 1877), did not include the taxes of 1878, because though the lien therefor related back to August 1, 1877, the assessment was not complete until January 1, 1878, and the taxes were levied in 1878.

8.  ———— : PROPOSAL : FORMAL ACCEPTANCE OF.  A person making a proposal or accepting one may attach a condition that the contract

be reduced to writing and signed by both parties, but the proposal or acceptance must be expressed so as to show such a condition was intended.

9. ——— : ———. The conclusion of A.'s letter that " if this is agreed to the agreement can be fully drawn up and signed" did not require a formal written agreement signed by both parties as a condition precedent to the existence of the contract.

10. ——— : ——— : ACCEPTANCE. The payment of the taxes by A, without any further agreement was an acceptance of the offer.

11. ——— : ——— : ———. While acceptance of a proposal and notice thereof must be given unless it appears from the offer that notice is not required, yet such assent and notice need not be formally expressed. It may be given and communicated by conduct as well as by words.

*Appeal from St. Louis City Circuit Court.*—HON. J. A. SEDDON, Judge.

REVERSED AND REMANDED.

*Leonard Wilcox* for plaintiffs, appellants.

(1) The ruling below with respect to the measure of damages was erroneous. (2) The ruling whereby plaintiffs were allowed to recover only a part of the respective sums found to have been paid by their testator in compliance with the defendant's letter, on lands therein mentioned and embraced in the decree of foreclosure, was erroneous. 1 Addison on Cont. [8 Ed.] *182; 2 Parsons on Cont. [7 Ed.] *499, 501, note u; *Connor v. Railroad*, 59 Mo. 293. (3) In ascertaining defendant's meaning, that construction of his letter of December 6, 1877, should be adopted which was most to the advantage of plaintiffs' testator. Anson on Cont. [2 Ed.] *253 ; *Bruner v. Wheaton*, 46 Mo. 367, 368; *Noonan v. Bradley*, 9 Wall. 407. (4) It was error to overrule plaintiffs' exceptions to the report of the referee filed March 18, 1887, numbered 4, 7, 10, 11, 12, 17 and 21. (5) It was error to overrule plaintiffs' exceptions to the report of the referee filed November 23,

1887. ( 6 ) It was error for the referee and court to rule that plaintiffs could recover the amounts found to have been paid by their testator, in discharge of the taxes for the year 1877 and prior years, only, and that they could recover nothing for what he had paid to discharge the taxes of the year 1878. *United States v. Bank*, 6 Peters, 36–37 ; *Goddard v. Seymour*, 30 Conn. 401 ; *District v. Sheridan*, 47 Iowa. 184–5 ; *Fowler v. Hoffman*, 31 Mich. 209, 220 ; *Scudder v. Coryell*, 10 N. J. L. 345. ( 7 ) It was error for the referee to refuse to admit in evidence the tax receipt ( Exhibit, numbered 5 ), for taxes of 1878, on lands in Stoddard county. ( 8 ) It was error for the court to overrule plaintiffs' exception, numbered 2, to the referee's report filed November 18, 1887. ( 9 ) It was error to refuse to permit plaintiffs to recover the amount paid by their testator in discharge of taxes for the year 1878 on lands in Scott county, and to refuse to permit Exhibit, numbered 8, being the receipt for said taxes, to be read in evidence. It was error to overrule plaintiffs' motion for a new trial. ( 10 ) The petition states a good cause of action, and if not defendant's objection comes too late. *First.* It was not necessary to allege or prove that a formal written agreement had been drawn up and signed. *Wilson v. Board, etc.*, 63 Mo. 141 ; *Bonnewell v. Jenkins*, L. R. 8 Ch. Div. 70 ; *Fowle v. Freeman*, 9 Ves. Jr. 353 ; *Oxford v. Provand*, 2 P. C. App. 135, 146, 147 ; *Thomas v. Deering*, 1 Keen. 732, 742; *Riggin v. Railroad*, 73 Mo. 598. *Second.* The averments that defendant promised to refund if plaintiffs' testator would pay the taxes, and that plaintiffs' testator did pay the taxes relying on the promise, are sufficient. Hare on Contracts, pp. 377, 380 ; Bishop on Contracts, secs. 87, 329 ; *Lindell v. Rokes*, 60 Mo. 251 ; *Miller v. McKenzie*, 95 N. Y. 579 ; *Morse v. Bellows*, 7 N. H. 561, 564 ; *Train v. Gold*, 5 Pick. 380, 384, 386 ; *Storm v. United States*, 94 U. S. 76, 83 ; *Barnstein v. Lans*, 104 Mass. 216 ; *Patton v. Hassinger*, 69 Pa. St. 314 ; *Lungstras v. Ins.*

*Co.*, 48 Mo. 204 ; *Reynolds v. Douglass*, 12 Peters ( U. S.) 504 ; *Livingston v. Dugan*, 20 Mo. 102; *Hamilton v. Ins. Co.*, 5 Pa. St. 344 ; Langdell Select Cases on Contracts ( 1871 ), pp. 42, 985 ; *Clark v. Russell*, 3 Watts, 217 ; *Houghawout v. Boisaubin*, 18 N. J. Eq. 318. *Third.* Even if it be true that the petition contains neither an averment that plaintiffs' testator accepted defendant's letter nor an equivalent averment, and hence is defective, yet this omission is waived by the answer ( *Wagner v. Railroad*, 97 Mo. 520 ; *Stivers v. Horne*, 62 Mo. 475 ; *Henry v. Sneed*, 99 Mo. 424 ; *Garth v. Caldwell*, 72 Mo 629 ) ; is cured by the verdict ( R. S. 1889, sec. 2113, subdiv. 8; *Grove v. Kansas City*, 75 Mo. 672 ; *Howell v. Reynolds Co.*, 51 Mo. 156 ; *Bowie v. Kansas City*, 51 Mo. 460, 462 ; *Shaler v. Van Wormer*, 33 Mo. 388 ) ; and under the circumstances of this case is not such a defect or error as affects the substantial rights of the defendant, or materially affects the merits of the case. *Gordon v. Eans*, 97 Mo., bottom p. 603 ; R. S. 1889, secs. 2100, 2303. ( 11 ) The evidence supports the findings of the referee and the judgment. *Patton's Ex'r v. Hassinger*, 69 Pa. St. 314 ; *Reynolds v. Douglas*, 12 Peters, 497 ; *Lungstras v. Ins. Co.*, 48 Mo. 204 ; *Soulard v. Peck*, 49 Mo. 477, 479 ; *Livingston v. Dugan*, 20 Mo. 102 ; Authorities, *ante*, point 1, *third*. ( 12 ) Defendant's third point, *first*, is inconsistent with the express admissions of his answer ; *second*, is not supported by the evidence, and, *third*, the alleged error was not excepted to by defendants. *Lenox v. Harrison*, 88 Mo. 491, syl. 2 ; *Jayne v. Wine*, 98 Mo. 404 ; *Craig v. Scudder*, 98 Mo. 664. ( 13 ) The admission of Thomas Allen's deposition was not error, and, if it was, no exception was preserved thereto. *Loman v. Stocke*, 94 Mo. 672 ; *Adams v. Rogers*, 69 Mo. 363 ; *Greene v. Chickering*, 10 Mo. 111 ; *Gordon v. Little*, 8 Serg. & Rawle, 547, 548, 549 ; *Bogie v. Nolan*, 96 Mo. 85, syl. 3 ; *State v. Johnson*, 76 Mo. 121, syl. 1 ; *Caughlin v. Haeussler*,

50 Mo. 126; *Craig v. Scudder*, 98 Mo. 664; *Schluter v. Wiedenbrocker*, 23 Mo. App. 440, 442; *Blackwell v. Bailey*, 1 Mo. App. 328, syl. 3; *Ridgeway v. Kennedy*, 52 Mo. 25 to 26. (14) Defendant's fifth point is not well taken. *Chapman v. Dougherty*, 57 Mo. 617; *Wilson v. Board*, 63 Mo. 137; *Wilkerson v. Allen*, 67 Mo. 502. See three last cases under point 4.

*G. A. Madill, G. H. Shields* and *Lionberger & Shepley* for appellant, Chouteau.

(1) The petition does not state a cause of action. *First.* The letter sued on was a mere proposal, and not a contract. 1 Addison on Contracts, 15; Pollock on Contracts, 42; *Bourne v. Shapleigh*, 9 Mo. App. 64; *White v. Corlies*, 46 N. Y. 467; *Emerson v. Graff*, 29 Pa. St. 358. *Second.* The petition does not allege that Allen accepted said proposal. *Eads v. Carondelet*, 42 Mo. 113; *Lungstrass v. Ins. Co.*, 48 Mo. 201; *Robinson v. Railroad*, 75 Mo. 494–498; *Bourne v. Shapleigh*, 9 Mo. App. 64; *Eleason v. Henshaw*, 4 Wheat. 225; *Tilley v. Cook Co.*, 103 U. S. 158; Pollock on Contracts, 31, 32, 42; *Kingston v. Phelps*, Peake's N. P. 299; *Chinnocks v. Marchioness*, 4 De G. J. and S. 636; *Boyd v. Hind*, 25 L. J. R. Exch. 346. *Third.* The allegation that Allen paid the taxes on the faith of the letter and with the knowledge of Chouteau is not an allegation of what is equivalent to an acceptance. (2) The evidence fails to establish a cause of action. *First.* It does not appear that Allen accepted the proposal of Chouteau. *Second.* It does not even appear that Allen paid the taxes on the faith of the letter, nor that he paid them with the knowledge of Chouteau. (3) The court erred, in any event, in charging Chouteau with taxes paid on the lands withdrawn from sale by the commissioner of the supreme court. These lands were withdrawn at the request of the judgment creditors, because they had been disposed of by the trustees and officers of the railroad prior to the institution of the foreclosure suit.

Chouteau could not, therefore, have got a good title to such lands in any sense of the word. (4) The court erred in admitting the deposition of Thomas Allen as evidence in the case. 1 Greenl. Ev., secs. 163–164. (5) The court erred in refusing to allow Chouteau to testify as to the acceptance of the contract proposed by his letter.

BLACK, J.—This is an action brought by the executors of Thomas Allen against Charles P. Chouteau to recover over $24,000, because of moneys expended by Allen in the payment of taxes on some two hundred thousand acres of land in the counties of Scott and Stoddard for the years 1871 to 1878, both inclusive. The cause of action is founded on a letter from Chouteau to Allen. The cause was heard by a referee, upon whose report judgment was entered for the plaintiffs for the sum of $20,659, and from which judgment both parties have appealed. As it is insisted by defendant that the proposal made by the letter was never accepted, so as to become a contract, it is necessary to set out much of the evidence.

In 1857 the Cairo and Fulton Railroad Company made a deed of trust conveying to trustees a large quantity of lands, including the lands now in question, to secure the payment of sixteen hundred bonds of $1,000 each, with interest coupons attached.

Charles P. Chouteau, the defendant in this case, claiming to own a large number of the bonds commenced his suit on the tenth of December, 1871, in the Mississippi circuit court to foreclose the deed of trust, making Thomas Allen and some five other parties defendants. Allen was made a defendant on the ground that he claimed to own the lands; the other defendants held some of the bonds secured by the deed of trust. Allen answered by denying the validity of the deed of trust, and by setting up its invalidity and that he was the owner of the lands in fee.

On June 8, 1875, the circuit court found that Chouteau was the owner of a note executed by the railroad company for $12,000, and that he held one hundred and twenty-five of the bonds to secure its payment, and gave judgment in his favor for $22,000, being the principal and interest due on the note, but gave judgment against him in other respects. From this judgment all the parties to the suit appealed.

While these appeals were pending in this court, Chouteau addressed to Allen the following letter, constituting the basis of this action:

"St. Louis, December 6, 1877.

" *Thomas Allen, Esq.*

"Dear Sir:—Your valued favor of the fourth inst. being sent to the office of Chouteau, Harrison & Valle, instead of my own, is only this moment received. In reply I beg to say that if you will pay all taxes now due on the lands covered by my suit pending in the supreme court of Missouri, in the case between you, myself and others, and lying in the counties of Stoddard and Scott, and that I shall obtain a good title to said lands, or any of them, by the present litigation, I will refund to you the amount paid and interest on such lands as I shall obtain a good title to. If this is agreed to, the agreement can fully be drawn up and signed. ,

"Very truly yours,

"Charles P. Chouteau."

Allen's letter of the "fourth inst." appears to have been lost, so that it was not produced on the trial. It does not appear that any agreement was drawn up and signed as suggested in Chouteau's letter; nor does it appear that Allen made any written acceptance. The evidence, however, shows that a stringent tax law had been passed in 1877; that Chouteau and Allen had had some conversations about the payment of these delinquent taxes. Mr. Cooper says he met Chouteau and told him Allen objected to paying the whole of the

taxes as he, Chouteau, had a claim on the lands; that he cannot tell exactly what Chouteau said, but the substance of it was that if Allen would advance the money he would arrange, or at least refund.    We understand this conversation to have occurred before the date of the above letter.    After Allen received the letter he sent for his land agent, Mr. Boughton, and made arrangements for paying the taxes.    Boughton says Allen read to him at that time Chouteau's letter of December 6, 1877; and Cooper says he saw the letter in the possession of Allen a day or two after it was written, and read it at the request of Allen.    George Allen, a son of Thomas Allen, says he assisted in paying the taxes, that Chouteau was in his father's office between the sixth and fifteenth of December, 1877, to the best of his recollection, and that he saw the letter before his father requested him to pay the taxes.

On the thirty-first of December, 1877, Allen, through his agents, paid taxes on the lands to the amount of over $7,000, and in 1878 and January, 1879, made additional payments, in all amounting to $24,648.32.    This aggregate amount includes $3,409.59 paid in December, 1878, and January, 1879, for the year 1878.    Some of the taxes were paid as the result of a favorable compromise with the county court.

After all the foregoing transactions and on the tenth of October, 1879, this court reversed the foreclosure judgment, and ordered the circuit court to enter up a judgment in favor of Chouteau on one hundred and twenty-five bonds and attached coupons, and to enter up a judgment in favor of the defendants, other than Allen, on the bonds held by them.

On the sixteenth of April, 1880, the circuit court gave judgment pursuant to the mandate of this court; but in the following May that court allowed Allen to file a second amended answer.    In this answer, Allen alleged that he was the owner of two hundred and sixty-three of the bonds secured by the deed of trust and

asked a foreclosure to satisfy his bonds. He also alleged that he had paid taxes upon the lands to the amount of $27,000, including the taxes now in question, and he asked to have a lien declared in his favor therefor.

In December, 1880, the circuit court gave judgment of foreclosure in favor of Allen on his bonds and declared a lien in his favor for the taxes. That judgment was reversed, and this court then entered judgment for Chouteau for $300,000 ; for defendant Seelye, for $123,320 ; for Patterson in the sum of $23,618, and in favor of Reid for $2,330. A commissioner was appointed who sold the lands and Chouteau became the purchaser of one hundred and fifty-six thousand, seven hundred and forty-seven acres in Scott and Stoddard counties, and received a deed therefor, dated October 26, 1882. He purchased and holds the lands for himself and the other judgment creditors in the proportions of their respective debts. Some fifteen thousand, one hundred and twenty acres were withdrawn from that sale by the judgment creditors and were not sold, because they had been before sold under the terms of the deed of trust. The sale of the lands by the commissioner, it may be added, did not pay the foreclosure judgments.

On the foregoing and some other evidence to be hereafter noticed, the referee found that the taxes for 1871 to 1877 had been paid by Allen on the faith of the letter of December 6, 1877 ; that the payment of the taxes constituted an acceptance of that letter ; that the final foreclosure judgment gave Chouteau a title, within the meaning of the letter, to all the lands described in the judgment, in the proportion of his debt to all of the judgment debts, which for convenience may be called a two-thirds interest. He excluded all evidence as to taxes paid for 1878, so that the judgment in favor of plaintiffs was for two-thirds of the taxes paid for 1877 and prior years.

1. The defendant insists that the petition does not state a cause of action in this, that the letter constituting the basis of the action was a mere proposal, and that it is not alleged that Allen accepted the offer. While the petition does not state that Allen accepted the offer, still it does aver that after the receipt of the letter he, influenced to do so by the letter and relying upon the promise therein made, and with the knowledge of Chouteau, paid the taxes for the years from 1871 to 1878. The facts thus stated amount to an acceptance of the offer, as will be seen from what is hereafter said.

But the objection is not well taken for another reason. The answer avers that Allen refused to, and did not, accept the proposition in the letter contained, and that no agreement was ever drawn up and signed ; all of which is denied by the reply. The answer aids the petition and accomplishes all that could be done by an amended petition. *Stivers v. Horne*, 62 Mo. 475 ; *Henry v. Sneed*, 99 Mo. 424.

2. After Allen had filed his second amended answer in the foreclosure suit of Chouteau against Allen and others, setting up ownership to a large number of bonds secured by the deed of trust, and asking to have the taxes paid by him declared a lien on the lands, Chouteau took Allen's deposition and filed it in that case. That deposition was read in evidence by Allen's executors on the trial of the present case, over the objections of defendant.

It is a well-settled principle that depositions taken in one case may be read in another suit between the same parties concerning the same subject-matter. 1 Greenl. Ev., sec. 163. As parties to a suit may now testify the same rule applies to their depositions. *Lohman v. Stocke*, 94 Mo. 677 ; *Adams v. Raigner*, 69 Mo. 363. Allen being dead, his deposition filed in the former suit was properly received in evidence in this one.

Since Allen and Chouteau were both parties to the former suit, it is a matter of no consequence that other persons were parties to that suit who are not parties to this one.   1 Greenl. Ev., sec. 164.

3.   Allen's deposition having been filed in this cause, and read by the plaintiffs, the court properly allowed Chouteau to testify in his own behalf.   *Caughlin v. Hauessler*, 50 Mo. 127.   But the defendant complains that he was not allowed to answer questions to the following effect: When did you first know of the payment of these taxes by Allen from 1872 to 1877 ? What contract, if any, between you and Allen was ever drawn up and signed as contemplated by the letter of December 6 ?   What contract in writing between you and Allen was ever made in regard to the payment of said taxes ?

The referee   sustained   the   objections   to   these questions on the ground that Chouteau's evidence must be confined to matters covered by Allen's deposition. Allen in his deposition says :   '' I agreed with Chouteau that one or the other of us should go on and protect these lands from trespassers and pay those taxes, and he wrote me a note which I will produce hereafter.   The deed of trust says the taxes have to be paid.   I paid them, no matter whose lands they are—that depends on the decision of the court.''   Being asked if there was any agreement between him and Chouteau concerning the payment of these taxes he said, '' No.   The agreement, if any, depends on the correspondence, or writing.   We had some conversations and I addressed him a note.   I thought I ought to advance the money and pay the taxes, and that it should depend on the result of the suit as to who should pay them.   I reduced it to writing in a note addressed to him.''

It is clear that the first of the interrogatories has no relation whatever to anything testified to by Allen. Chouteau took the deposition of Allen for the evident

purpose of discovering when, how and for what consideration the latter acquired the bonds set up in the second amended answer, and there seems to have been no purpose to go into a full investigation concerning the payment of the taxes. Under these circumstances we think the referee committed no error in confining the evidence of Chouteau to matters spoken of by Allen. As to the other questions, it is sufficient to say there is no claim that any formal agreement was ever written up and signed by both parties, nor is there any claim that there is any contract other than that arising from the payment of the taxes pursuant to the letter.

4. On the part of the defendant, it is insisted that the referee erred in charging him with taxes on the lands withdrawn from the commissioner's sale, and to which he acquired no title. The plaintiffs, on the other hand, insist that the referee erred in allowing them only two-thirds of the amount of taxes paid by their testator, and that he erred in excluding the taxes paid for the year 1878. As these objections are all made on the assumption that Chouteau's proposal ripened into a contract, and as they all depend upon the meaning of the letter, they may be considered together.

Chouteau said to Allen, you pay the taxes and "I will refund to you the amount paid and interest, on said or such lands as I shall obtain a good title to" by the present litigation. It was then apparent to him that to secure the debt which he sued to recover it might become necessary for him to purchase the lands. Hence, the proposition made was this, to refund the taxes paid on those lands and those only to which he should obtain a good title. He obtained no title by the foreclosure judgment; nor did he obtain title to the lands which were not sold under that judgment. The lands withdrawn from that sale were withdrawn because they had been sold under the terms of the deed of trust. Had they been sold by the commissioner and purchased by Chouteau, he would have acquired no title.

The letter is plain enough, and we have no right to construe the life out of it. By it Chouteau is to be charged with taxes on those lands and those only which he purchased at the fore closure sale. He and the other judgment creditors found it necessary to buy in the lands jointly, and he is to be charged with taxes on the undivided interest which he acquired, and on that interest only. This follows from what has been before said. It is a matter of no consequence that the whole title was conveyed to him; for he took the title under a written agreement to hold the same for the benefit of himself and the other judgment creditors. It is the interest which he acquired for himself that must control; for he did not undertake to pay taxes on lands or any interest in them purchased by persons other than himself.

Chouteau says, "If you will pay all the taxes now due on the lands," etc. The letter bears date December 6, 1877; and the question is whether the taxes for 1878 were due within the meaning of the proposal. While the lien for the taxes of 1878 related back to the first of August, 1877, still the assessment was not completed until the first of January, 1878, and the taxes were levied during the year 1878. The tax books could not go to the collector until after the fourth Monday of April, 1878. It was the vast amount of delinquent taxes and the revenue act of 1877 that induced the correspondence. When the letter speaks of taxes "now due" it means such taxes as could have been paid at that time, and not such as might thereafter be levied. The referee, therefore, did not err in excluding the taxes for 1878.

5. The next question is whether there was any contract between the parties. The letter concludes with these words: "If this is agreed to, the agreement can be fully drawn up and signed." Allen went on and paid the taxes without any further agreement. A party making a proposal, or an acceptance of one, may make

it a condition that the contract be reduced to writing and signed by both parties. But, it is equally clear that the proposal or acceptance must be expressed in such a way as to show that such a condition is intended. 1 Addison on Cont. 15; *Wilson v. Board of Ed.*, 63 Mo. 137. In *Bonnewell v. Jenkins*, L. R. 8 Ch. Div. 70, the agents of the vendor made this answer to a letter written by the plaintiff: "We are instructed to accept your offer of £800 for these premises, and have asked Mr. Jenkins' solicitor to prepare contract." Jenkins was the vendor. It was said by FRY, J.: "A long series of cases has established this proposition, that the mere reference to a future contract is not enough to negative the existence of a present one." It was accordingly held that the acceptance was complete, and that, too, in an action for specific performance.

The letter here in question presents a very plain, full and complete proposition. The clause concerning a more formal agreement is not expressed in such a way as to show that a formal written agreement signed by both parties was intended to be made a condition to the existence of a contract. It rather says to Allen, "a formal agreement can be drawn up and signed, if you desire it to be done." We think Chouteau must have known that Allen would so understand the clause in question; and if Chouteau must have known that Allen would understand it to mean that a more formal contract need not be drawn up, unless Allen desired it to be done, then, Chouteau being the proposer, is bound by that meaning. Had Allen replied by saying: "I accept your proposition," the contract would have been complete without any further writing.

We do not regard the case of *Eads v. The City of Carondelet*, 42 Mo. 113, as at all in conflict with what has been said. In that case the proposition of Mr. Eads was accepted by the first section of the ordinance; but the second section gave the mayor power to enter

into a written contract "embracing the terms of the proposition mentioned in the first section of this ordinance, and such further conditions as may be deemed necessary." The ordinance, taken as a whole, was not an unconditional acceptance of the proposal made by Eads.

This brings us to the further objection that Allen did not accept the offer or proposal, nor communicate any acceptance to defendant.

To make a mere offer or proposal a contract there must be an acceptance, and notice of the acceptance must be given, unless it appears from the offer that notice is not required. *Robinson v. Railroad*, 75 Mo. 494. But assent and notice need not be formally expressed; the assent may be given and communicated by conduct as well as by words. Pollock on Cont. 28. Full performance of the consideration of an offer, before the offer is withdrawn, constitutes an acceptance of the offer. Bishop on Contracts, secs. 87, 329; Langdell's Cas. on Contracts, 989; *Bornstein v. Lans*, 104 Mass. 215; *Perkins v. Hadsell*, 50 Ill. 216; Leake on Cont. 50; *Lindell v. Rokes*, 60 Mo. 249; 1 Whart. on Cont., sec. 10. There is no doubt but Allen made full and complete performance of the offer.

But it is here again insisted that he did not pay the taxes on the faith of the letter, but was moved so to do to protect his own interest. He and Chouteau were both in doubt as to the result of the pending litigation, and Allen had expressed an unwillingness to pay the taxes, except upon some agreement with Chouteau. They had a conversation concerning these delinquent taxes, and then followed the correspondence. Allen immediately sent for his land agent and made arrangements to pay the taxes, and within thirty days paid a large portion of them. Can there be any doubt that he acted upon the strength of that letter? We think not.

Chouteau certainly had knowledge on May 28, 1880, when Allen's deposition was taken, of the payment of

the taxes. The litigation involved large interests, and both parties were on the alert. The large amount of delinquent taxes and accumulated penalties and costs required immediate attention, and it is unreasonable to say Mr. Chouteau did not know what Allen was doing concerning these delinquent taxes, which both parties desired paid. There is an abundance of evidence from which it may be inferred that Chouteau was cognizant of the payment of the taxes at the time they were being paid.

In January, 1881, and while the appeal from the foreclosure judgment in favor of Allen was pending in this court, Allen and Chouteau made a written agreement whereby Allen agreed to pay the taxes on the lands for the years 1879 and 1880, and Chouteau agreed to immediately reimburse him to the extent of one-half. In a letter written by Allen to Chouteau on the twenty-third of February, 1881, he spoke of the payment of taxes under that agreement, and asked to be repaid the one-half, and then said, "I should be pleased if you would also reimburse me, in part, at least, for the still larger amount paid by me in '77, '78, '79." Mr. Chouteau answered by referring Allen to his attorneys. Chouteau settled with Allen's son, in 1881, for the taxes paid under that agreement. The fact that no settlement of the prior taxes was then made is of no significance; for Chouteau was not bound to refund those prior taxes until he obtained title to the lands, and at that date he had acquired no title. The lands had not then been sold under the foreclosure judgment.

Allen died in April, 1882, and had been a sick man away from home for a year prior thereto. The letter constituting the basis of this action was found with other valuable papers, and was presented by the agent for the estate to Chouteau for settlement. There is much evidence of conversations between the agent and Mr. Chouteau, but it does not change the conclusion before reached as to the facts, and need not be recited.

The only error in the record is in charging defendant with taxes on lands which he did not purchase, and for this error the judgment must be reversed; but there is no need of a new trial. The circuit court will correct this error, and enter up judgment for the plaintiffs. The judgment is, therefore, reversed and the cause remanded with the above instructions. All concur except BARCLAY, J., who dissents.