# WESTERN ROOFING TILE CO. v. JONES.

No. 378. Opinion Filed May 10, 1910.

(109 Pac. 225.)

1. **CONTRACTS—Execution—Conditions Precedent — Reduction to Writing.** Where parties to an agreement make it reduction to writing and signing a condition precedent to its completion, it will not be a contract until this is done, and this is true although all the terms of the contract have been agreed upon. But where parties have assented to all the terms of the contract, and they are fully understood in the same way by each of them, the mere reference in conjunction therewith to a future contract in writing will not negative the existence of a present contract.

2. **SALES—Contract—Execution—Reference to Future Reduction to Writing.** H. entered into a written contract with W. to manufacture and furnish roofing material to be used in the construction of certain school buildings which H. had contracted to erect. On H. making default, J. took the contract to erect these buildings and wrote to W. (a corporation) informing it that he had entered into a contract to complete H.'s contract, which he signed "after the telephone communication between yourself and Mr. Thomas, president of the school board, in which you stated that you would carry out with me the contract of June 1, 1907, made between yourself and Mr. Harper, and this is to confirm the telephone conversation between Mr. Thomas and yourself and to request that you do likewise. I note that your representative will be here Wednesday, at which time we can enter into a more formal memorandum of our agreement if same should be considered necessary." Whereupon W., without a further writing, manufactured, ready for delivery, the material involved in the contract with H., which J. refused to receive. To the petition setting up these facts and praying damages, the court sustained a demurrer. Held error.

(Syllabus by the Court.)

*Error from District Court, Pittsburg County; Preslie B. Cole, Judge.*

Action by the Western Roofing Tile Company against J. E. Jones. A demurrer to the petition was sustained, and plaintiff brings error. Reversed and remanded.

*A. C. Markley,* for plaintiff in error.

*James S. Arnote,* for defendant in error.

DUNN, C. J. December 11, 1907, the plaintiff in error, as plaintiff below, brought its action against J. E. Jones, by filing its petition in the district court of Pittsburg county, for the recovery of damages which it alleges to have sustained by reason of a breach of a contract into which it avers defendant entered with it. To plaintiff's petition defendant filed a demurrer, which was by the court sustained, and the case has been brought to this court by petition in error and case-made.

The essential parts of the petition and the contract sued on, along with the correspondence incident thereto, is as follows: Plaintiff alleges that on or about June 1, 1907, it entered into a contract with W. R. Harper of South McAlester, Ind. T., to prepare, manufacture, and furnish materials for the roofing of four school buildings in that city; that on or about July, 1907, the defendant, J. E. Jones, succeeded to W. R. Harper in his contract for the erection of the buildings; and that on or about August 3, 1907, he assumed the contract with plaintiff in which W. R. Harper had previously entered for the roofing material. The contract sued on is as follows:

"Coffeyville, Kansas, 6-1-'07. J. E. Jones, South McAlester, I. T.—Dear Sir: We agree to deliver at school buildings, South McAlester, I. T., and lay in place upon the main roof of the First Third, and Fifth Ward grade schools to be erected at South McAlester, I. T., according to the plans of Smith & Parr, architects, which were submitted to us Jan. 1, 1907, the following quantity of roofing tile and trimmings which we estimate will be required to cover the above roofs; tile to be wired if the architects insist: 32 1-3 squares Niagara tile. 30 1-3 ridge. 220 1-3 Hip Roll. 8 Hip Roll starters. 5 Two-way Hipped Finials. For each building for the sum of $425.00 each, and we will furnish and lay the tile and trimmings on the Second Ward colored school as above for the sum of $475.00. We agree to first cover the roofs with tarred felt and nail or wire the same in place, point all valley tile, hip roll, and ridging with Portland cement, colored to match the tile and furnish either wire or nails for fastening the same in

place.   The contractor agrees to construct the roof in strict accordance with the above-mentioned plans and to sheath all roofs and to furnish all strips if the tile are to be wired on, and to have all valley metal in place and all roof sheet metal work done (except aprons that have to be put on after the tile are laid), and to have all flues and all guttering on or before the tile are laid.   Failing to comply with these conditions, the party accepting this contract agrees to pay for all extra material and expense because of roof not being constructed according to plans, or because of same not being ready when we are notified to lay same.   It is further agreed that the superintendent of construction will inspect said roofs immediately upon completion of the tile work and should he find any defects either in material or workmanship he will at once order tile roofers to make said repairs before they leave the job.   Failure to make inspection and notify workmen as above will be construed as an acceptance of tile roofing.   Payment to be made on each roof upon completion of same.   [Signed] Western Roofing Tile Co.

"Accepted:   W. R. Harper, Contractor."

It is averred that the evidence of Jones having assumed the Harper contract with plaintiff is manifested  by  the  following letter:

"South McAlester, I. T., Aug. 3, 1907.   Western Roofing Tile Co., Coffeyville, Kansas—Dear Sir:   As you have possibly by this time learned Mr. W. R. Harper has made default in the performance of his contract to construct school buildings in the 1st, 3d, and 5th wards, and the colored school building in the 2d ward in this city, and the school district has appointed Monday, the 5th inst. to formally terminate his employment and has entered into contract with me to complete his contract which I signed to-day after the telephone communication between yourself and Mr. Thomas, president of the school board, in which you stated that you would carry out with me the contract of June 1, 1907, made between yourself and Mr. Harper, and this is to confirm the telephone conversation between Mr. Thomas and yourself and to request that you do likewise.   I note that your representative will be here Wednesday, at which time we can enter into a more formal memorandum of our agreement if same should be considered necessary.   Kindly give me your early reply hereto.   I expect to com-

mence work on the buildings on Tuesday the 6th inst. Very truly yours, J. E. Jones."

To this letter plaintiff on August 13th wrote the defendant as follows:

"Coffeyville, Kansas, 8-13-'07. Mr. J. E. Jones, South McAlester, I. T.—Dear Sir: Our representative found it next to impossible to make your city, and as we do not expect to have any one in your territory in the near future, we are inclosing herewith contract between Mr. Harper and ourselves, and if you will kindly sign this and return it to us it will square matters to our satisfaction. We note that you have commenced work on the·buildings, and we will endeavor to have our tile there on time so as not to delay you. Please advise us ten days to two weeks in advance of the time the tile will be needed if possible, so that we can arrange accordingly. Yours truly, The Western Roofing T'le Co., R. Frank Cooper, Secy."

On September 20th the defendant wrote plaintiff the following letter:

"South McAlester, I. T., Sept. 20, 1907. The Western Roofing Tile Co., Coffeyville, Kansas—Gentlemen: On the 30th day of August, we returned the contract you made with Mr. W. R. Harper for the four school buildings that we have taken the contract for, here in McAlester, I. T., and you were to make out a new contract to us in duplicate, sign same and send to us to sign, and as you do not seem to want to fill out this contract and send to us and we do not care to hold this matter open any longer, we hereby call the deal off. and have made other arrangements for buying the roofing for these buildings elsewhere. We are Yours very truly, Jones Mfg. Co., per J. E. Jones."

The foregoing writings were all pleaded by plaintiff as a part of its petition, and it avers that between June 1, and September 15, 1907, it had prepared and manufactured special material to be used in the roofing of the four school buildings under the said contract, which material could not be sold or used on other buildings; that plaintiff has all of said material on hand and has held the same subject to the order of defendant; that it cannot dispose of said material without suffering a loss of $781.30; that it has held itself ready to place the roofs on the buildings in

accordance with the contract and was prevented from so doing by the acts of the defendant. Whereupon it prayed judgment for the amount of its loss.

Counsel for defendant takes the position in his brief that no completed contract was entered into between the parties due to the fact, as it claims, that plaintiff was to make out a new contract in duplicate, sign the same, and send it to the defendant, and, in view of the fact that this had not been done, that no enforceable contract existed between the parties; that an acceptance of a contract to be effectual, must be identical with the offer and unconditional; that there was no communication between the parties upon which the claim that a contract was entered into could be sustained; that the petition, when construed in connection with the admitted writings of the parties, stated no contract upon which plaintiff could recover; and that no error was committed by the court in sustaining the demurrer.

The inherent terms of the contract sought to be enforced in this case are not in controversy. The question presented simply is: Did the defendant enter into it? In defendant's first letter to the plaintiff, he informs it that Harper, who had previously engaged the roofing material, had made default in his contract to construct the buildings; that the school district had formally terminated his employment; that it had entered into a contract with him to complete the contract for their construction; that he had signed the same after the president of the school board had communicated with plaintiff by telephone, in which, as defendant states, plaintiff consented to carry out with defendant the contract here in suit, made between it and Harper. The defendant then states that this (letter) is to confirm the telephone communication between Mr. Thomas and the plaintiff, and plaintiff was therein requested to do likewise, to wit, confirm that it would carry out with him the contract which it had made with Harper. Defendant then stated that he noted that a representative of plaintiff would be at South McAlester on Wednesday, at which time "we can enter into a more formal memorandum of our agreement if same should be

considered necessary." Under this, when defendant's reference to "our agreement" is taken into consideration, in conjunction with the telephone communication referred to, it is difficult to come to any other conclusion than that defendant gave plaintiff to understand that he had an agreement with it, and, as no other contract or agreement was then under consideration than the one here in suit, it appears conclusive to our minds that plaintiff was justified in assuming that defendant had adopted or assumed the contract to which the communication related.

It will be noted that defendant states that this formal memorandum could be entered into if the same should be considered necessary. He does not state that he considered the same necessary, evidently intending to leave this question open for future determination at least on the part of plaintiff and possibly on his own part; but, so far as the contract itself was concerned, it is clearly inferable that he accepted it and signed with the school board only after he ascertained that plaintiff would permit the substitution. There was no doubt in his mind at that time as to the full terms of the agreement between plaintiff and Harper, because he invited plaintiff to carry out with him the contract of June 1, 1907, made with Harper. The plaintiff by its letter, written on the 13th of August, referring to defendant's note to the effect that its representative would be at McAlester on Wednesday, wrote him that he found it "next to impossible" to be there, and that it did not expect to have any one in that territory in the near future, and then stated that it inclosed the contract between Harper and itself with the statement that, if defendant would sign it and return it, it would square matters to its satisfaction. In the same letter, to show that plaintiff did not regard the signing of this contract as essential to its completion, it stated to defendant:

"We note that you have commenced work on the buildings and we will endeavor to have our tile there on time so as not to delay you. Please advise us ten days or two weeks in advance of the time the tile will be needed if possible, so that we can arrange accordingly."

This was certainly clear evidence to the defendant that plain-

tiff did not consider it necessary that the contract be signed by the defendant in order that it proceed under its terms. This language is not susceptible of any other reasonable construction. On September 20th, which was five days after the time plaintiff alleged it had prepared and manufactured the special material contracted for, defendant wrote plaintiff that he had on the 30th of August returned the Harper contract, and that plaintiff was to make out a new contract to him in duplicate, sign it, and send it to him signed, and that as plaintiff did not seem to want to fill out this contract, and defendant did not care to hold the matter open longer, he thereby called the deal off, as he had made other arrangements for buying roofing for the building. This letter would not undo a contract previously made if one had been made, and, if this was defendant's desire, it should have been expressed before plaintiff acted and not afterward. The rule in reference to the question here presented is that, where parties desire to make the reduction of any agreement into which they have entered to writing and its signature a condition precedent to its completion, it will not be a contract until this is done, and this is true although all the terms of the contract have been agreed upon. But where parties have assented to all the terms of the contract, and they are fully understood in the same way by each of them, the mere reference in conjunction therewith to a future contract in writing will not negative the existence of a present contract. The question involved is always one of intention. 7 Am. & Eng. Ency. of Law, p. 140; Hammon on Contracts, p. 85; Wald's Pollock on Contracts (3d Ed.) p. 46; *Thomas v. Dering,* 1 Keen, 729, 48 English Reports (Reprint) 488; *Mississippi & Dominion Steamship Co. v. Swift et al.,* 86 Me. 248, 29 Atl. 1063, 41 Am. St. Rep. 545; *Allen et al. v. Chouteau,* 102 Mo. 309, 14 S. W. 869; *Blaney et al. v. Hoke,* 14 Ohio St. 292; *Montague et al. v. Weill & Bro.,* 30 La. Ann. 50; *Hodges v. Sublett,* 91 Ala., 588, 8 South. 800; *Wharton v. Stoutenburgh,* 35 N. J. Eq. 266—are all authorities which sustain the principle laid down above. In the citation from Wald's Pollock on Contracts, the author says:

"It is settled law that a contract may be made by letters, and that the mere reference in them to a future formal contract will not prevent their constituting a binding bargain."
And this is supported by an extended note containing citations of American authorities.

. .The rule stated by Mr. Hammon, in. his work on Contracts, is that "if the parties finally agree upon all the terms proposed, and intend to become immediately bound, there is a complete contract, although they further intend to embody the terms of the agreement in a writing to be formally executed by them." The conclusion to which we come in this case is strengthened when we consider that the defendant solicited on his part the privilege of availing himself of the terms of the previous contract entered into by his predecessors on this building contract. It is clear to our minds that he sought to step in the place of Mr. Harper and receive the benefit of the written agreement which had already been made for the roofs of the buildings, and there is no evidence, as we view this record, to support his present claim that he did not intend to be bound until after a new writing had been executed.

The judgment of the district court is, accordingly, reversed, and the case remanded.

All the Justices concur.