. PLIMPTON MARCY *vs.* MERRICK MARCY.

No action lies on an oral promise to pay, at a time more than one year from the making of the promise, for land conveyed to the promisor.

CONTRACT. The declaration alleged that in 1837 the defend-ant, in consideration of a certain farm then conveyed to him by the plaintiff's father, promised to pay to the plaintiff the sum of five hundred dollars, upon the plaintiff's arriving at the age of twenty-one years; and that in 1840 the plaintiff arrived at that age, and demanded payment, which was refused. The writ was dated November 30th 1863. The answer, amongst other defences, set up the statute of frauds.

At the trial in the superior court, before *Rockwell*, J., the plaintiff offered evidence to prove the facts alleged in the dec-laration, and that the deed was made at the date of the promise, and that since the cause of action accrued the defendant has been absent from the Commonwealth. The judge ruled that the action could not be maintained, and directed a verdict for the defendant, which was returned accordingly; and the plaintiff alleged exceptions.

*G. F. Hoar*, for the plaintiff, cited Browne on St. of Frauds, (2d ed.) §§ 116, 284, 286, 288, 289, and cases there cited.

*P. C. Bacon & P. E. Aldrich*, for the defendants, cited Browne on St. of Frauds, (2d ed.) §§ 136, 290, 451, and cases there cited.

BIGELOW, C. J. The single question raised by these excep-tions is, whether the contract set out in the declaration, and on proof of which the plaintiff relies to maintain this action, does not fall within that clause of the statute of frauds (Gen. Sts. *c.* 105, § 1) which provides that "no action shall be brought upon an agreement that is not to be performed within one year from the making thereof." There would be no room for doubt on this point if the contract had remained wholly executory and it appeared to have been the intention of the parties that no part of it should be performed within the year. It is ad-mitted that the agreement would then have clearly come within

the express words of the statute. But in the case at bar the contract was fully executed by one of the parties. The intent was that the land which formed the subject matter of the contract should be presently conveyed. The only stipulation which remained unperformed was that for the payment of the purchase money. This was not to be paid until after the expiration of nearly three years from the time when the agreement was entered into.

It is contended, on the part of the plaintiff, that to such a contract the provision of the statute of frauds above cited does not extend; that it was intended to apply only to contracts which are wholly executory, and to actions brought to recover damages for the non-performance of executory stipulations, where neither party was bound to perform any part of the contract within a year; that where an agreement has been fully executed by one of the parties within the year, according to the original intent with which it was entered into, and nothing remains but the payment of money or the fulfilment of a counter stipulation by the other party as a consideration for that part of the contract which has been performed, an action may be maintained to recover damages for a breach of such executory stipulation, although in terms it was not to be fulfilled within the year, and there is no written evidence of the contract. Upon the true construction of this clause of the statute of frauds, there has been no authoritative decision in this commonwealth. The only allusion to the point of contention now raised is to be found in *Cabot* v. *Haskins*, 3 Pick. 83. It was there urged by the counsel for the plaintiff that where there is a mutual agreement, and either party is to perform in less than a year, the contract is not within the statute. But the case was decided upon another point, and no opinion was given upon the question now at issue. Regarding it, therefore, as an open one, which we are at liberty to determine unembarrassed by any previous judicial decision which is binding upon us, we have only to look at the language of the statute, and endeavor to ascertain its true construction by the application of the ordinary rules of interpretation.

The literal and obvious meaning of the words is clear and

unambiguous. The provision is, in substance, that verbal evi‑ dence shall be insufficient to support an action on an agreement which is not to be performed within a year. In making this ex‑ plicit enactment, the legislature must be understood to have used the word " agreement" in no unusual or extraordinary sense. In the absence of any explanatory or qualifying words, it must be interpreted according to the common and approved usage of the language, unless it has some peculiar and appro‑ priate meaning in the law. For the purposes of this case, it is not material to determine whether it has any special and tech‑ nical signification, such as is sometimes attributed to it. In whichever sense it is understood — whether it is to be inter‑ preted as signifying a mutual contract, and as intended to include the stipulations of both parties, which is its strict legal meaning, as was held in *Wain* v. *Warlters*, 5 East, 10; or as a promise or undertaking by one party only, of a purely unilateral character, which is the meaning given to it by this court in *Packard* v. *Richardson*, 17 Mass. 122, 131 — the requirement is, that it is to be in writing. If the former is its correct interpre‑ tation, then the true construction of the provision is that the stipulations of both parties must be in writing, unless the prom‑ ise of each is to be fulfilled within the year; that is, the entire agreement, comprehending all that is to be performed by either party, must be supported by written evidence. It is immaterial that performance by one party of his part of the contract is to be complete within the prescribed period. It is none the less on that account a part of the original agreement. Nor can it be properly said that an agreement, if the word is used as appli‑ cable to the subject matter of a contract consisting of mutual obligations, is performed within a year, when it has been ful‑ filled by one side only; such a conclusion would seem to involve the absurdity expressed in the language of a learned judge: " It cannot be said that an agreement is performed when a great part of it remains unperformed; in other words, that part per‑ formance is performance." In the sense, then, of a mutual con‑ tract, importing reciprocity of obligation by which two parties are bound, an agreement is required to be in writing, if the

undertaking of either party is not to be fulfilled within the year But in the more restricted meaning of the word, as signifying the promise or contract of one party only, it would seem to be equally clear that it would apply to and include every stipulation, the performance of which is to be postponed beyond the expiration of a year. So far as an agreement is to be executed within the year, this statute could have no application to it.

Take the case at bar as an illustration. The intent of the parties was, that the title to the land, the conveyance of which formed the consideration of the defendant's promise, should be immediately transferred to him. The consideration became an executed one accordingly. Nothing further remained to be done by the grantor. It can make no difference in this view whether the conveyance and promise to pay were simultaneous, or whether the contract is to be regarded as having preceded the transfer of the land. In whichever light it is viewed, the agreement which subsisted between the parties after the delivery of the deed was that which was executory. There was then nothing on which the defendant could have maintained an action against the plaintiff. In a certain sense, the contract by the execution of it by one of the parties had become unilateral only, and was to be performed solely by the defendant. It is to proof of this contract that the plaintiff must resort, in order to make out his case. But as by its express terms it was not to be performed within a year, it was in the strictest sense within the prohibition of the statute, and no action to enforce it can be maintained.

In either view, therefore, of which the meaning of the word " agreement " is susceptible, whether it is construed to mean the stipulations of both parties, and to include those which have been performed as well as those which are future and executory, or whether it is interpreted as comprehending the latter only, the statute embraces both classes, and applies with equal force to a contract where the consideration has been executed fully by one of the parties, and to one where the whole promise is executory.

The real difficulty with the construction for which the plaintiff contends is, that it virtually engrafts a distinct provision on

the statute, which the legislature seem studiously to have omitted. The express requirement is, that no action shall be brought on agreements which are not to be performed within a year, unless they are supported by written proof; to this must be added, by the mere force of judicial construction, according to the plaintiff's theory of interpretation, a further provision, by which all agreements are taken out of the operation of the statute, if they have been in part performed by one of the parties within the prescribed period. But no such implication necessarily arises out of the terms of the statute, or is involved in its operation, in order to adapt it to the ordinary business and practical concerns of life. We are at a loss, therefore, to understand how such a construction can be reconciled with any sound rule of judicial exposition. Nor is it to be overlooked, in this connection, that in the original statute of frauds, which contained the provision in question, there is another enactment still retained as part of the statute — that relating to contracts for the sale of goods above a certain amount — which expressly provides that part performance, as well as written evidence of the bargain, shall be sufficient to render it valid. The inference is very strong that if the legislature had intended to apply the same rule to agreements which were not to be performed within a year, they would in like manner have so enacted in terms, and not left so important an element in the legal validity of contracts to be deduced by doubtful implication.

The view which we have taken of the true construction of the statute is greatly fortified by a consideration of the purpose which the statute of frauds was designed to accomplish, and the mischief which it was intended to prevent. The great object of the enactment was, that contracts of an important character, as well as those which were not to be executed within a prescribed period, should be supported by more certain and satisfactory evidence than could be afforded by verbal testimony only. The danger of fraud and perjury, and the risk of mistakes arising from the defective and imperfect recollection of witnesses, were the evils against which the provisions of the statute were directed. The especial object of the clause which

provides that written evidence of a contract not to be performed within a year shall be necessary to support an action was, to prevent the proof of verbal agreements, when, from the lapse of time, witnesses might not be able to recollect their precise terms. *Lapham* v. *Whipple*, 8 Met. 59. It is difficult to see why all the reasons of policy and expediency to which the statute owes its origin do not apply with equal force to an agreement, only one part of which is not to be performed within the year, as to a contract, the whole of which is executory, and is not intended to be performed by either party till after the year is past. The consideration or counter stipulation for that part of an agreement which has been executed may often be the most complicated part of a contract, the details of which it may be difficult to retain in memory; and, if the payment or performance of it is postponed until after the expiration of a year, the danger of mistake or perjury in attempting to establish it by parol evidence would be none the less, because the agreement has been fully executed by the other party. Evidence of the fact that land had been conveyed or goods delivered, or that a promissory note had been given, or proof of the existence of any other executed consideration, would have but little if any tendency to show the nature of the executory stipulations on the faith of which such part performance had been made. If these are left to be made out by verbal evidence only, it is obvious that a wide door would be left open for the very evils which the statute was designed to prevent. If the statute includes only agreements where the mutual promises are not intended to be performed within a year, a large class of contracts would be left without any limitation as to the time within which they might be susceptible of being established by parol proof. Any future executory stipulations, however numerous or complex, the consideration of which was executed at the time an alleged agreement was entered into, might be proved by the testimony of witnesses, founded on their unaided recollections, although their performance was postponed for a period of time however long. If, for example, the contract set out in the plaintiff's declaration can be proved without any written evidence, then a similar

contract could be established by the same species of evidence although the payment of the consideration for the conveyance of land was not to be made for ten or twenty years. A construction of the statute which leads to such a conclusion seems to us not only to be contrary to the terms of the enactment, but to be subversive of the beneficial objects for which it was adopted.

It may be said that the effect of the interpretation which we propose to give to the words of the statute may be to work great injustice in certain cases, by depriving parties of a legal remedy to enforce executory stipulations for which they have given or paid a full consideration. If this be so, it by no means follows that the construction is erroneous. A rule of law, expedient and salutary in its general application, may sometimes operate hardly, and produce inequitable results. But it is none the less necessary, in order to avoid greater mischiefs, that the rule should be established and enforced. We are, however, strongly inclined to the opinion that cases would rarely occur in which the rule in question would operate to shut a party out of all remedy, or essentially impair his right to recover an equivalent for an executed consideration. Although he might not be able to maintain his action on the agreement, because he could not establish it by competent proof, he might nevertheless recover a fair remuneration for his property, or the money which he had paid, from the person who had received the benefit of it. In other words, although he could not recover on the express contract, because it would come within the statute, he might resort to the implied promise which the law would raise on the part of the person who had enjoyed this consideration to pay for that which he had received. If, for example, goods were sold and delivered to a person on a promise by him to pay for them after the expiration of a year from the sale and delivery, it would be a valid defence to an action for the stipulated price that the contract of sale was not to be fully performed within the year. But if such defence were set up, and the contract thereby thrown aside, the law would let in proof of the value of the goods, and allow the plaintiff to recover upon a *quantum*

*meruit.* Nor are we prepared to say that, on the trial of such an issue, it would not be competent to show the terms of the contract as evidence, in the nature of an admission, of the value of the consideration and the extent to which the defendant had been benefited by it. The same principles would apply, if the executed consideration was a conveyance of land or the transfer and delivery of any other valuable species of property.

In seeking for light as to the proper interpretation of this clause of the statute of frauds among the decisions of other courts, we meet with adjudications which directly conflict with each other. The general doctrine of the English cases is, that the provision of the statute does not apply where a contract has been fully performed by one of the parties within the year. This construction seems to have had its origin in a *dictum* uttered by Lord Ellenborough in the course of the argument of counsel, in the leading case of *Boydell* v. *Drummond*, 11 East, 142. Although it has been followed and approved in subsequent cases, to an extent which seems to have established it as the rule of law in England, it has not escaped criticism by learned authors and judges. Smith, in his note to *Peter* v. *Compton*, 1 Smith's Leading Cas. (5th Amer. ed.) 432, directly impugns it, and asserts that the doctrine is inconsistent with that held in the earlier cases. Coltman, J., in *Souch* v. *Strawbridge*, 2 C. B. 808, says, " I feel some difficulty in saying that the plaintiff may rely on an executed consideration, when he is obliged to resort to the executory contract in order to make out his case." So in *Sweet* v. *Lee*, 3 Man. & Gr. 452; S. C. 4 Scott N. R. 71; Maule, J. intimates that a performance by one side within the year would not take that part of a contract out of the operation of the statute which was to be executed after that time. Mr. Browne, in his very excellent treatise, which contains a full and clear summary of the cases, expresses a doubt as to the soundness of the views by which the English courts have been governed in their interpretations of this clause of the statute. §§ 289, 290. It is certainly true that the subject has never been fully discussed in England. One reason for this may be that, in every case in which the question has been presented, the stipulation

sought to be enforced has been for the payment of a money consideration, where the defendant has received the full benefit of the performance of the contract by the plaintiff. In all these cases a count in *indebitatus assumpsit* has been inserted in the declaration, so that the plaintiff would be entitled to recover the value of the executed consideration, although the contract itself might be within the statute. Indeed, it may be still an open question whether any case in England goes further than to hold that a party may recover the value of a consideration of which the defendant has received the benefit. The case of *Souch* v. *Strawbridge* is one of the leading cases cited in support of the doctrine that an agreement not to be performed within a year is not within the operation of the statute of frauds, if the consideration has been fully executed by the other party within the year. But in the recent case of *Green* v. *Saddington*, 7 El. & Bl. 503, it is said by the court that the reasoning of Chief Justice Tindal in *Souch* v. *Strawbridge* only recognizes the principle that the provision of the statute relating to contracts not to be performed within a year " has no application to an action of *indebitatus assumpsit* on an executed consideration; " a proposition very different from the one which the case has been generally supposed to have sanctioned. It may be justly said of the English decisions on this clause of the statute, that they do not harmonize with the construction given to other parts of the same statute. For instance, it has been often held that partial execution of a contract, which is required by the statute to be in writing, will not have the effect to take it out of the operation of the statute in an action at law. It is certainly difficult to see why an entire execution by one party of his side of the agreement should be sufficient to do that which cannot be effected by the performance by him of a part of that which he stipulated to do, although such part may constitute the most important of the stipulations in the agreement. Nor is it easy to reconcile the cases which hold that a memorandum under the statute must show the consideration, because the word " agreement " embraces the stipulations of both parties, with those which construe the same word in another section of the statute as

including only the stipulations of one side. No one can read the earlier cases in the English courts, giving an interpretation to the various provisions of the statute of frauds, without being impressed with the strong tendency which then existed to narrow the operation of its provisions. But recently the disposition to a strict construction has very much relaxed. In a recent case, in giving an opinion on a clause of the statute, it is said by the court that "formerly it was the practice to construe statutes which interfered with the common law as strictly as possible; but such is not the proper course of proceeding. We ought faithfully to interpret statutes as we think the legislature meant."

In the courts in this country, opposite views of the meaning of the clause in controversy, and of its application to certain classes of agreements, have been expressed. The cases on the subject are collected in Browne on St. of Frauds, § 289, *note.* In *Broadwell* v. *Getman*, 2 Denio, 87, and *Pierce* v. *Paine*, 28 Verm. 34, the same construction has been given to a similar clause of the statutes of New York and Vermont relating to contracts not to be performed within a year, as that hereinbefore stated. *Exceptions overruled.*