**PIERCE PETROLEUM CORP. v. HALES et al.**

No. 19525.   Opinion Filed Dec. 23, 1930.

Kleinschmidt & Johnson and Dolman & Dyer, for plaintiff in error.

Stuart, Cruce & Franklin and Cruce & Potter, for defendants in error.

REID, C. These four cases had proceeded by separate pleadings until the day of the trial, when by consent of the parties and order of the court they were consolidated as being identical upon the issues, and we find they are. Each of the petitions alleged that, on March 6, 1925, the plaintiff entered into contract with the defendant, Pierce Petroleum Corporation, which acted through its Oklahoma manager and duly authorized agent, R. P. Kistler, for the sale of crude oil from a certain described tract of land situated in Carter county, Okla., for a term of one year from March 15, 1925; that the delivery of the oil was to be made by pipe lines to be connected with the wells of plaintiff and at a price of 25 cents a barrel over the posted price of the Prairie Oil & Gas Company for like grades of Mid-Continent crude oil; and that if said company discontinued posting the price, then plaintiffs could select a major purchasing company which had a posted price, and that should be the price for the balance of the term of the contract, and conditions as to the time of payment for the oil were alleged; that, in pursuance of such agreement and contract, the defendant did, on the 15th of March, 1925, cause other pipe lines to disconnect from plaintiff's property, and did make its connection with the wells of plaintiffs, and took and received the oil from said property until the 11th day of June, 1925, and, in accordance with its agreement with the plaintiffs, paid them for the oil runs on the 10th day and 25th day of each month from the 15th of March, 1925. Plaintiffs further alleged that as a memorial of the contract and agreement, they executed a written division agreement embodying the terms and conditions of the contract of sale and purchase made with the defendant, which acted by its agent as aforesaid, and the defendant made no objection to the agreement until the 10th day of June, 1925, but each of the parties thereto acted upon it as if the same were valid and binding. A copy of the division agreement was made an exhibit to each of the petitions. Plaintiffs further alleged that, after the making of the contract, the price of oil had declined

in the field where plaintiffs' leases were situated; that after diligent effort they were unable to make sale of the oil for but 15 cents above the posting price, and upon this asked judgment for ten cents per barrel on their part of the production from the lease from the time of the breach of the contract until the date of its expiration.

The defendant answered, first, by general denial, and further denied that any valid contract was made between the parties, or that Kistler, the alleged agent, had any authority to make one. The defendant further pleaded that the plaintiffs and Kistler agreed upon a tentative contract subject to the approval of the president of the defendant company; that the contract was in writing and submitted to him, but he refused to execute it unless certain amendments were made, which plaintiffs declined, and the instruments were returned unsigned; that, pending the approval of the contract, the oil was run to defendant on open division orders day by day with the right to cease buying at any time.

The plaintiffs filed a reply denying generally the allegations of the answer, and further pleaded that Kistler had the authority to enter into the contract as plaintiffs had alleged in their petition, that the agreement was executed by the plaintiffs, delivered to and accepted by the defendant and performed as alleged in the petition.

The cases were tried to the court without a jury. At the close of the plaintiff's evidence, the defendant demurred, stood on its demurrer, the court overruled it, and rendered judgment for each of the plaintiffs as prayed for; whereupon the defendant appealed.

It appears that four suits were filed by some of the same plaintiffs against this defendant, in the United States District Court for the Western District of Oklahoma, based upon a contract similar in form, but relating to different production. The cases were consolidated, and upon trial there the district court rendered judgment for the defendant, and on appeal the Eighth Circuit Court of Appeals affirmed the judgment. Simpson-Fell Oil Co. v. Pierce Petroleum Corporation, 32 Fed. (2d.) 576. It is claimed by the defendant that the principles of law announced in that case apply here to deny the plaintiffs' recovery. We shall refer to that case later.

It is contended by the defendant that the plaintiffs' judgment cannot stand, because (1) that Kistler, who is alleged by plaintiffs to have acted for the defendant in making

the contract sued on, in fact, had no authority to make such contract; (2) that the evidence shows that the negotiations between Kistler and some of the plaintiffs acting for themselves and the others culminated in only a tentative agreement, never actually entered into by the defendant; and (3) that the contract alleged falls within the ban of the statute of frauds of this state.

The evidence is sufficient to show that the terms of the contract were agreed to on March 6, 1925, by Mr. Fell and Mr. Hales, representing themselves and the other parties with like interests, and Mr. Kistler, who purported to act for the defendant. The understanding was reached by using as a basis therefor a division agreement which Mr. Fell had, and making such changes therein as met the minds of the parties negotiating. It was not convenient to prepare the written agreements on that day, but in accordance with the understanding they were prepared within a day or two, signed by each of the plaintiffs and mailed to Kistler at Tulsa, Okla., and were by him, according to the understanding of March 6th, forwarded to the New York office of the defendant to be formally executed by the signature of the president of the defendant company. Kistler did not sign the agreements, but it is to be borne in mind that we are not discussing an instrument which is required under any statute to be executed by any certain officer of a corporation in order to be effective.

The agreements provided that on March 15, 1925, the defendant would connect up its lines with the wells of the plaintiffs, and thereafter take their oil and pay therefor in the manner alleged in their petitions, not necessary to repeat here; and at that time the defendant did so connect its pipe lines with plaintiffs' wells, and all the parties interested proceeded to act upon the agreement made as of March 6th, until Mr. Pierce, the president of the defendant company, wrote Kistler objecting to some features of the contract, suggesting that the oil be taken on open division orders thereafter, unless the plaintiffs agreed to his suggestions. This was communicated immediately to the plaintiffs by Kistler in a letter of May 5th, and they refused to negotiate further as to the contract on the ground that they had completely contracted with Kistler and had lost their contracts with other parties who had been taking their oil, and could not renew them. Payments for the oil were made in accordance with the agreement until about June 11, 1925, when the defendant disconnected its lines from plaintiffs' wells. The evidence disclosed that there was a greater demand for oil on March 6th than there was when the taking of plaintiffs' oil was discontinued by the defendant, and the evidence is sufficient to show that after due effort plaintiffs were unable to sell their oil for any more than 15 cents per barrel above the posted price, and thereby sustained the damages recovered by the judgments.

Here it may be observed that the opinion in the suit in the federal court discloses that C. A. Pierce, president of the defendant company, testified that Kistler had no authority to make the contract as plaintiffs alleged, but only to negotiate a tentative agreement, and that the division agreements referred to in plaintiffs' petition herein were submitted to him by Kistler, and that he refused to sign them for reasons stated in a letter written to Kistler in which he suggested amendments. Kistler seems not to have testified in that case, and as we read the decision of the Circuit Court of Appeals, and that of the district court copied in defendant's brief, those cases seem to have turned against the plaintiffs on the ground that they had failed to show the authority of Kistler to make the contract. But that situation does not prevail in this case, for here the plaintiffs as a part of their case introduced Kistler as a witness, and the testimony of Pierce for the defense is absent, the defendant introducing no testimony but relying on its demurrer to plaintiffs' evidence. Of course, the plaintiffs could not establish their claim of Kistler's authority by showing his acts and declarations, but his testimony on the trial, if sufficient, would establish such fact. 21 R. C. L. page 821; Whitcomb v. Oller, 41 Okla. 331, 137 Pac. 709; Citizens Bank of Gans v. Mabry, 90 Okla. 63, 215 Pac. 1067; Munn v. Mid-Continent Motor Securities Co., 126 Okla. 241, 259 Pac. 249. Also, the fact of his agency may be gathered from all the circumstances in the case (Knupp v. Hubbard, 130 Okla. 111, 265 Pac. 133), including the subsequent conduct of the parties.

Kistler testified that he was manager of production for the defendant, and that it had refineries in Sand Springs, Okla., and Ft. Worth, Tex.; that it was his business to buy oil to supply these refineries, and that the oil of plaintiffs was desired to supply the Ft. Worth refinery; that he never received any specific instructions to make the usual purchases. In substance, he testified that he made the contract with plain-

tiffs as it was evidenced by the division agreements. He said that Mr. Pierce was president of the company at the time and going to the question of his authority his testimony is as follows:

"Q. And you made this contract on behalf of the company to purchase the same as you made other contracts to purchase? A. I negotiated this understanding with these gentlemen at that time. By the Court: How long had you been with the Pierce people in Oklahoma, in a purchasing capacity? A. Three months. Q. Then you went in about the first of the year 1925, in that capacity? A. Yes, sir. Q. Have you authority from any source to make that kind of a contract? A. That question is a little difficult to answer. This is the only case of this kind that arose, and in this particular case, after seeing these gentlemen, I wired to Mr. Pierce with regard to it. At the time of this matter I wired Mr. Pierce that we would have to pay 25 cents premium to get oil for the other plant, we having purchased no oil for the other plant during the time I had been working for them; it had been shut down for some reason, and I had been instructed by Mr. Pierce to ascertain if I could get a certain quantity of oil at a premium of ten cents. After seeing these gentlemen, I wired Mr. Pierce that I could not get the oil for less than 25 cents and Mr. Pierce had finally wired that they would pay the 25 cents. Following that, I telephoned Mr. Hales to that effect, as to my reply from Mr. Pierce, and he set a date for Mr. Fell to come to Oklahoma City, bringing with him a draft of a previous contract he had with another company, or at least bringing with him a proposed contract drawn by himself worded * * * from * * * he said, a contract they had with another company * * * We discussed this proposed contract brought by Mr. Fell paragraph by paragraph, made pencil notations and penciled paragraphs, additions, aside from the contract, and I returned to Tulsa, leaving them to draw up a contract along those lines and send to me and I would send it on to Mr. Pierce of New York."

We think this evidence, together with other circumstances we have mentioned, is sufficient to show that Kistler, for the defendant, made the contract, and that he acted within his authority. Certainly, making the contract was within the scope of his apparent authority, and that alone would make it binding on his principal (Consolidated Flour Mills Co. v. Muegge, 127 Okla. 295, 260 Pac. 745, and authorities therein cited) unless unenforceable by reason of the statute of frauds.

It is contended that no contract was actually completed on March 6, 1925, but that only negotiations were then had between Kistler and plaintiffs, and that the contract was to be completed, or effective, conditioned only upon its execution by the president of the defendant company.

This question is to be determined largely from the intention of the parties at the time. And as Kistler, we have found, was acting for the defendant at that time, the intention of Kistler and the plaintiffs is what is material. This court, in the case of Western Roofing Tile Co. v. Jones, 26 Okla. 209, 109 Pac. 225, stated the rule applicable to the evidence in this case in the following language:

"Where parties to an agreement make its reduction to writing and signing a condition precedent to its completion, it will not be a contract until this is done, and this is true although all the terms of the contract have been agreed upon. But where parties have assented to all the terms of the contract, and they are fully understood in the same way by each of them, the mere reference in conjunction therewith to a future contract in writing will not negative the existence of a present contract."

In the case of Willey v. Goulding, 99 Kan. 323, 161 Pac. 611, the court said:

"The fact that the parties may have contemplated the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply that they had not already bound themselves to a definite and enforceable contract whose terms could be changed only by mutual consent. Post v. Davis, 7 Kan. App. 217, 52 Pac. 903; 6 R. C. L. 618-620; note 20 L. R. A. 431; note 110 Am. St. Rep. 755."

The testimony of Fell and Hales, who acted for themselves and the other plaintiffs, is sufficient to show that a complete understanding and agreement was made on March 6th between the parties, and we think the evidence of Kistler also establishes this fact. Under these circumstances the contract comes within the rule announced by this court in the case of Western Roofing Co. v. Jones, supra. And then, the facts that the agreements when reduced to writing were dated March 6th, and the defendant did on the 14th day of March, 1925, proceed in accordance with the understanding of March 6th, to connect plaintiffs' wells with its pipe line and to pay for the oil in accordance with the same agreement, is further evidence that the contract was not to await execution by the president of the company before effective.

On the question of the statute of frauds, the defendant contends that, as plaintiffs stand upon a contract made on March 6,

1925, to become effective on March 15th, and to continue until March 15, 1926, it falls within and is void under that part of section 5034, C. O. S. 1921, reading as follows:

"The following contracts are invalid, unless the same, or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent:

"First. An agreement that, by its terms, is not to be performed within a year from the making thereof."

If the evidence of the contract rests in parol, the contention of defendant is probably correct, but we have concluded that plaintiffs' evidence took the contract out of the statute in the manner and under the rule hereinafter indicated.

In measuring a state of facts to see whether they fall within a certain statute, it is always helpful to understand the purpose of such statute. The object of the statute of frauds, in general, and especially the subdivision here invoked, is well stated in the case of Marcy v. Marcy, 91 Mass. 8, as follows:

"The great object of the enactment was that contracts of an important character, as well as those which were not to be executed within a prescribed period, should be supported by more certain and satisfactory evidence than could be afforded by verbal testimony only. The danger of fraud and perjury and the risk of mistakes arising from the defective and imperfect recollection of witnesses, were the evils against which the provisions of the statute were directed. The especial object of the clause which provides that written evidence of a contract not to be performed within a year shall be necessary to support an action, was to prevent the proof of verbal agreements when, from the lapse of time, witnesses might not be able to recollect their precise terms."

It will be seen from what we have stated that contracts between the parties were actually made on March 6, 1925, and written evidence thereof—the division agreements—was signed by all parties representing one side of them. The inquiry then becomes whether such "contract or some note or memorandum thereof be in writing and subscribed by the parties to be charged or his agent." It is further to be noted that the "party to be charged," here the defendant, is not required to subscribe the contract, but if he or his agent subscribe "some note or memorandum thereof," that is sufficient.

"The memorandum is only necessary to evidence the contract, not to constitute it. As Chief Justice Tindal says, in Laythoarp v. Bryant, supra, 'The contract is made before any signature thereof by the parties.'

"The memorandum or note is only to evidence what the contract was. To prevent perjury as to such contracts, the statute declares that evidence of what the contract was must be contained in some memorandum or note in writing, signed by the party to be charged therewith. When the memorandum exists, and is legally given in testimony, it becomes evidence of the contract claimed to have been made. The memorandum is not the contract, but only evidence of the contract." Charlton v. Columbia Real Estate Co., 67 N. J. Eq. 629, 3 Ann. Cas. 402.

In the opinion by Judge Cotteral in the United States District Court, to which we have referred as copied in the brief of the plaintiff in error, we find this language:

"Counsel for the plaintiffs would avoid the application of the statute by authorities holding that separate writings, such as letters of the parties, are sufficient as memoranda and they rely on the letters of Mr. Kistler and Mr. Pierce, in which they refer to and show their knowledge of the division agreements. They cite the following cases: Beckwith v. Talbot, 95 U. S. 289; Rose's Notes, vol. 9, p. 339; Baird Investment Co. v. Harris, 209 Fed. 291; Louisville Asphalt Varnish Co. v. Lorick, 2 L. R. A. 215; Bayne v. Wiggins, 139 U. S. 210; Whitted & Co. v. Fairfield Mills, 210 Fed. 725; Western Roofing Tile Co. v. Jones, 26 Okla. 209, 109 Pac. 225.

"The rule counsel invoke is well settled. But the decisions presuppose there is a contract, the only difficulty being in the proof of it in fact. In these present cases, however, the oral contract is not proved for want of Kistler's authority from the defendant, so that the cases cited are here inapplicable."

We have said that the result of that case in the district court and in the Circuit Court of Appeals appears to have gone against the plaintiffs solely upon the finding that they had not shown the authority of Kistler to make the contract sued on. The above expression by Judge Cotteral is a recognition of the fact that if the authority of Kistler had been shown, the letters to which the court refers were sufficiently tied to the contract to identify it and constitute a note or memorandum signed by an agent of the defendant sufficient to bind it.

In Wood on Statute of Frauds, section 373, we find the precise rule applicable to the facts in this case stated as follows:

"Where a contract in writing, or note, or memorandum exists, which binds one party, any subsequent note in writing signed by

the other party is sufficient to bind him, provided it either contains in itself the terms of the contract, or refers to any writing which contains them."

See case of Drury v. Young, 58 Md. 546, 42 Am. Rep. 342, and notes, page 343.

Upon Kistler receiving the written agreements signed by plaintiffs, he inclosed them in the following letter:

"Tulsa, Okla., March 10, 1925.
"Contract with Hales et al.
"Mr. C. A. Pierce, President,
"Pierce Petroleum Corporation,
"111 Broadway,
"New York, N. Y.

"Dear Sir: Contract with Mr. W. T. Hales and his associates are forwarded herewith for execution by the New York Office.

"With reference to paragraph 2, the term 'merchantable oil' is not defined, but the practice of the Mid-Continent field will prevail in this respect. These gentlemen are good operators and will hold the B. S. to the lowest possible content. I told them that where the B. S. was more than 1%, we would leave the oil in the tank until the B. S. should settle to that extent. In actual practice, this may sometime work a hardship upon them, in which event, at their request we will go ahead and run the oil and make proper reduction.

"Yours very truly,
"R. P. Kistler, Manager.
"RPK/WDE ENCLS.

"C. C. Mr. W. T. Hales, Oklahoma City
"C. C. Mr. H. B. Fell, Ardmore, Okla."

The foregoing letter was written by an agent of the defendant. It sufficiently identifies the contract or division agreements which had been signed by the other parties. Reading the letter in connection with the written agreements inclosed, it must be construed as a statement of an agent that he had already made the contracts and was simply forwarding the written evidence thereof to the executive officer to be formally executed. This evidence is sufficient to take the contract out of the statute of frauds. It fully met the reasons for the statute. Miller v. Kansas City, Ft. S. & M. R. Co., 58 Kan. 189, 48 Pac. 854; Peabody v. Speyers, 56 N. Y. 230; Lee v. Cherry, 85 Tenn. 707; Barnett v. McCrea, 76 Hun, 610, 27 N. Y. S. 820. See cases cited in note to Charlton v. Columbia Realty Co., supra, 3 Ann. Cas. 404.

It follows from what we have said that the judgments should be affirmed. And it is so ordered.

BENNETT, LEACH, TEEHEE, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1, 2,) 21 R. C. L. p. 821 et. seq., R. C. L. Perm. Supp. pp. 107, 108; R. C. L. Continuing Perm. Supp. p. 811. (3) anno. 29 L. R. A. 431; 6 R. C. L. p. 618; R. C. L. Perm. Supp. p. 1775; R. C. L. Continuing Perm. Supp. p. 261.