### KEYS v. WINTERS SECURITIES CORP. et al.

No. 24440.    Sept. 8, 1936.

Otjen & Carter, for plaintiff in error.

McKeever, Stewart & McKeever and Roy J. Elam, for defendants in error.

PER CURIAM. This action was commenced on the 29th day of August, 1930, by the Winters Securities Corporation to recover on a series of notes secured by a chattel mortgage. The second amended petition was filed April 4, 1931. The causes of action consist of 18 promissory notes executed by the defendant Enid Laundry Company, a corporation, and dated the 1st day of April, 1929. The chattel mortgage securing the same constituted the 19th cause of action; it was dated the 1st day of April, 1929, and executed on behalf of the company by A. H. Keys, called also throughout the proceedings Albert Keys, and acknowledged by A. H. Keys, and an affidavit of the mortgagor is attached thereto stating that A. H. Keys, being duly sworn, says that he is vice president and treasurer of the Enid Laundry Co., which corporation is the lawful owner of the property described and included in the within instrument of writing, and that it has full power to sell and mortgage the same and give clear title: and that there are no chattel mortgages or liens upon said property and that each and every representation made in said mortgage is true and has been made for the purpose therein set forth. It is subscribed and sworn to by A. H. Keys. Although the notes and mortgage are dated the first day of April, 1929, this shows subscribed to on the 30th day of March, 1929.

There is no controversy about the amount due on the series of notes to the plaintiff; nor is it contested that it is the owner and holder of the notes and mortgage given to secure the same. Prior to execution of the series of notes the Enid Laundry Company had executed a series of notes dated the 6th day of January, 1927, and payable to R. W. Yates Laundry Machinery & Supply Company. The company was payee of the other series of notes described above. Desiring to refinance this obligation Margaret Keys and John C. Keys, father of A. H. Keys, who had acquired the stock of the defendant corporation, sent A. H. Keys to Kansas City where he talked to Mr. Blum, the treasurer of the company, and the series of notes last described and owned by and sued upon by answer and cross-petition of the General Contract Purchase Corporation were refinanced and the notes held by the plaintiff in that case were executed to take the place thereof. It was agreed that the notes held by R. W. Yates Laundry Machinery & Supply Company would be returned to the Enid Laundry Company, and A. H. Keys took a receipt for the series of notes. At this time this first series of notes had already been sold to the Credit Alliance Corporation.

These notes afterwards came into the hands of R. W. Yates Laundry Machinery & Supply Company, who, instead of sending them to A. H. Keys as per their agreement, renegotiated them to the General Contract Purchase Corporation.

At the trial defendant Enid Laundry Company took the position that the notes had been paid. During the progress of the trial M. B. Blake became the owner of this series of notes formerly held by the General Contract Purchase Corporation, and was substituted as a party defendant in the stead of said General Contract Purchase Corporation. At the time A. H. Keys went to Kansas City in April, 1929, he testified that he knew that the Credit Alliance Corporation was the owner and holder of the first series of notes, and that the new series of notes was given with the idea that out of the proceeds the outstanding notes and mortgage would be paid. He testified further that the reason he made the affidavit that the property was clear and this was a first mortgage, was that, when the new series of notes and mortgages were delivered to Mr. Blum, that automatically paid off the notes of the Yates Laundry Machinery & Supply Company held by the Credit Alliance Corporation in so far as he was concerned. An objection to this testimony was taken by M. B. Blake and sustained by the court,

but it shows the attitude of A. H. Keys herein and was the consistent attitude of A. H. Keys on behalf of himself and the Enid Laundry Company throughout the trial.

Subsequent to this line of testimony by A. H. Keys both sides rested. Before judgment was entered plaintiff filed a motion to reopen the case, stating that:

"M. B. Blake, the substituted intervener, is vice president of the Liberty National Bank at Oklahoma City, and that he is merely a straw man acting in behalf of the defendant, Enid Laundry Company, and did so act in the alleged purchase of the notes from the General Contract Purchase Corporation; that the arrangement was made for him, to make such purchase by A. H. Keys for the Enid Laundry Company whereby the Enid Laundry Company will get $6,000 in notes for $2,000 and in truth and in fact the thing purchased by M. B. Blake was the interest of the General Contract Purchase Corporation in the decree of the court and not the notes and that M. B. Blake never was and is not now a party at interest."

Following this motion, on July 8, 1932, there was filed by the defendant M. B. Blake a motion to substitute as party defendant Arthur Keys; that motion, omitting the formal parts, is as follows:

"Comes now M. B. Blake, and represents to the court that Arthur Keys has acquired his interest in the subject-matter involved in this action and moves the court that the said Ralph Keys (sic) Arthur Keys be substituted for the name of M. B. Blake and the General Contract Purchase Corporation herein."

This motion to substitute was signed by Otjen & Carter, attorneys for M. B. Blake On July 18, 1932, the court heard the motion to substitute Arthur Keys instead of M. B. Blake. Arthur Keys testified in his behalf that he was the brother of Albert Keys and the son of Margaret A. Keys; that he did not own any stock in the Enid Laundry Company, and that in June of 1931, he purchased for $3,000 the notes of the General Contract Purchase Corporation, and that he paid cash therefor, and that he had them bought through M. B. Blake for the reason that M. B. Blake could buy them cheaper than he could buy them and that he had attempted to buy them before.

Upon such testimony the case was reopened and Arthur Keys was substituted in the place of M. B. Blake. The plaintiff then filed a supplemental reply and answer denying in many respects the contention of M. B. Blake and Arthur Keys and raising all the necessary matters of denial relative to his ownership and purchase of said notes. To this a reply was filed by Arthur Keys raising the general issues sufficient to test his right as a holder in due course of the notes formerly held by the General Contract Purchase Corporation.

On August 2, 1932, the court heard the cause upon the pleadings as made upon the reopening of the case. M. B. Blake, appearing for the plaintiff, testified that he obtained $2,000 from Albert (A. H. Keys), and bought the notes for Arthur Keys, and that he bought them to accommodate Albert Keys and at his suggestion; that he bought them in June, 1931; that he bought them through Mr. Carter, his attorney, and paid therefor the sum of $2,000 by a draft drawn upon the Liberty National Bank of Oklahoma City, Okla. R. E. Cunningham, witness for the plaintiff, testified that Albert and Arthur Keys came to the office of the plaintiff on April 17, 1931, and proceeded to testify relative to an attempted compromise on the notes held by the plaintiff, and such testimony was finally excluded by the court upon the theory that Albert Keys and Arthur Keys were acting for and on behalf of the Enid Laundry Company, and that any testimony relative to a compromise was improper. Arthur Keys in his own behalf testified that he took $2,000 from his safe-deposit box and gave it to his brother, Albert Keys, to purchase the notes held by the General Contract Purchase Corporation; that he used currency for the reason that his business was involved at the time, and that he did not want anyone to know of the transaction; that he did not own any stock in the corporation and did not purchase the same for the Enid Laundry Company, and that the Enid Laundry Company did not furnish the money; that he did not get any of the money from Albert Keys. He admitted that he went to Kansas City with Albert on April 17, 1931, and called upon the plaintiff Winters Securities Company at that time. At the time of the alleged purchase of these notes by M. B. Blake, they were all past due.

At the conclusion of all the evidence the trial court rendered judgment in favor of the Winters Securities Corporation on its notes and chattel mortgage, and denied Arthur Keys any relief on his cross-petition for the reason that his purchase of the notes and chattel mortgage sued on resulted in the full satisfaction of the indebtedness represented thereby for the reason that Keys in so acquiring said instruments did so for

the benefit of the Enid Laundry Company. This is alleged error of the trial court and is practically the only matter presented to this court on appeal.

The pleadings are voluminous and the testimony is extensive, but many matters have been eliminated in view of our subsequent holding upon the finding and judgment of the trial court. If the trial court was correct in finding as a matter of fact and law that by the acquiring of the said notes Arthur Keys became the owner and holder thereof as the agent of and for the benefit of the Enid Laundry Company, all of the allegations with respect to the rights of innocent purchaser in so far as they deal with the notes formerly held by the General Contract Purchase Corporation are eliminated.

Section 11418, O. S. 1931, states when an instrument is discharged as follows:

"A negotiable instrument is discharged:

"First. By payment in due course by or on behalf of the principal debtor;

"Second. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;

"Third. By the intentional cancellation thereof by the holder;

"Fourth. By any other act which will discharge a simple contract for the payment of money;

"Fifth. When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

It is not disputed that Keys at the time he acquired the notes in question was fully advised of the claim being made that said notes had been paid and satisfied. He admitted that he knew of the pending litigation wherein this claim was being asserted. He further admitted that he went with his brother, Albert Keys, on the 17th day of April, 1931, to the office of the plaintiff to discuss the controversy that had arisen by virtue of the fact that there were two outstanding series of notes covering practically the same property of the defendant Enid Laundry Company. It is true the court excluded such testimony for the reason that the trial judge thought it involved an attempted compromise of a lawsuit and the right of litigants in court. It is pertinent to state in this connection that, on the 17th day of April, 1931, Arthur Keys, according to his testimony, had no interest in the matter in litigation or the outcome thereof for the reason that he did not become the owner and holder of said notes until the following June.

We are convinced that there is ample evidence in the record supporting the findings of the trial court.

It is the settled rule that the question of agency and the scope and extent of the agent's authority are to be gathered from all the facts and circumstances in evidence and are to be determined either by the jury or the court as a trier of fact. Beasley v. Sparks, 163 Okla. 15, 20 P. (2d) 584; Schoonover v. Beveridge, 108 Okla. 114, 233 P. 728; Williams v. Mayes Lumber Co., 149 Okla. 201, 299 P. 885; Consolidated Flour Mills Co. v. Roberts, 123 Okla. 101, 252 P. 29; Catlin v. Reed, 141 Okla. 14, 283 P. 549, 67 A. L. R. 1410; Pierce Petrolum Corp. v. Hales, 147 Okla. 42, 294 P. 160; Pepin v. Thompson & Sons Lbr. Co., 150 Okla. 295, 1 P. (2d) 714.

This court has repeatedly held that where there is any competent evidence supporting the findings and judgment of the trial court, such finding and judgment will not be disturbed. Forman v. Needles, 78 Okla. 105, 188 P. 1087. Finding no error in the action of the trial court in rendering judgment for the plaintiff, said judgment is affirmed.

McNEILL, C. J., and RILEY, WELCH, CORN, and GIBSON, JJ., concur.