**FRY v. FOSTER.**

No. 27569. March 16, 1937.

Lee & Allen and E. F. Lester, for plaintiff in error.

Sprague & Childers and Bascom Coker, for defendant in error.

BUSBY, J. This is an action by R. M. Fry, an alleged purchaser of the right to enter upon and cut and remove timber from a certain tract of land located in McCurtain county belonging to J. M. Askren, a resident of Detroit, Mich. The plaintiff, Fry, is seeking an injunction to prevent the cutting and removal of the timber by Bon Foster, who claims the same under an alleged prior contract said to have been entered into between him and Askren through certain informal communications.

The action was commenced in the district court of McCurtain county on September 4, 1936. A temporary injunction was obtained at the time it was instituted. Issues were promptly framed by appropriate pleadings, and the cause was heard on its merits on September 23, 1936, resulting in a judgment for the defendant which operated as and included an incidental adjudication that the temporary injunction should be dissolved. The plaintiff appeals. The order of appearance is the same in this court as in the court below. We shall employ the trial court designation in referring to the parties.

The contract under which the plaintiff

claims the timber is in writing and was entered into between the landowner, J. M. Askren,' and the plaintiff on August 28, 1936. It was admittedly effective to convey the right to cut and remove timber from the land unless J. M. Askren had entered into a binding agreement with the defendant with reference to the same timber. The alleged agreement on which the defendant relies was admittedly prior if a binding and enforceable agreement existed at all. No question is raised in connection with the remedy invoked or the parties to the action. Our inquiry is therefore narrowed to the question which, as stated in p'aintiff's brief, is:

"The only question in this case is whether or not the defendant in error had a written or an express contract, negotiated and consummated by letters and telegrams exchanged between the defendant in error and J. W. Askren, the owner of the land and timber."

A contract is an agreement to do or not to do a certain thing (section 9389, O. S. 1931). The contract comes into existence through the acceptance of an offer, but the acceptance must conform to the proposal, otherwise it becomes a new proposal, or counter offer (section 9430, O. S. 1931). An agreement which constitutes a contract may come into existence by means of informal communications between the parties. Foster v. West Publishing Co., 77 Okla. 114, 186 P. 1083. Such informal communications may create the obligation notwithstanding an expressed expectation of the parties to subsequently execute a formal contract, if it appears that the parties intended to obligate themselves prior to the execution of the formal agreement. Western Roofing Ti'e Co. v. Jones, 26 Okla. 209, 109 P. 225, Ann. Cas. 1912B, p. 129; Day v. Ferguson, 129 Okla. 22, 263 P. 126; Pierce Petroleum Corp. v. Hales, 147 Okla. 42, 294 P. 160; Universal Products Co. v. Emerson (Del.) 179 A. 387, 100 A. L. R. 956.

Simi'arly, it is universally agreed that a contract may be made to make a future contract. Williston on Contracts, vol. 1, p. 36, par. 28; 6 R. C. L. 617, p. 38.

A decision of this case requires an analysis of the correspondence between the defendant, Bon Foster, and the landowner, J. W. Askren. On July 15, 1936, Foster wrote to Askren as follows:

"Bethel, Okla.
"July 15, 1936
"J. W. Askren,

"Dear Sir:

"I am writing you in regards to your timber in S. 32, Township 3 Range 24. I will give you Seven hundred Dollars for this tract of timber so let me hear from you by return mail. Yours truly, Bon Foster, Bethel, Okla."

This was clearly an offer. To the letter the following reply was made by Askren:

"Detroit, Mich. July 20th '36
"Mr. Bon Foster
"Bethel, Okla.

"Dear Sir

"Your letter of the 16th at hand about the timber. I get a good many letters about the timber but I do not really want to sell it but can't look after it much. A few years ago a big lumber firm in Kansas City, Mo. wanted me to give them the first chance if I decided any time in future to sell. I might consider selling the timber under conditions such as the size of timber removed and the fire hazard left behind. Some of the companys cut from 10 inches up only. I would not want the smaller timber removed and would want to know how soon the timber would be removed. Yours truly, J. W. Askren, R. 1, Box 1050, Detroit, Mich."

This was not an acceptance of the offer. It was in the nature of a rejection thereof, coupled with an invitation to negotiate further. It contains the implied suggestion that Askren might be willing to se'l the right to cut timber over ten inches (in diameter).

The defendant assumed from the letter a willingness on the part of Askren to sell, and in accord with that assumption wrote as follows:

"Bethel Okla
"July 25 1936
"Mr. J. W. Askren,

"Dear Sir

"I recd your letter July 24 in regards to your timber. I will not cut aney thing under 10 inches. I am sending contract to you to send to the bank with draft. Send it to the Idabel National Bank with draft attached. I will pay off as soon as it comes in the contract I am asking for 1 year but I think I can remove timber in 60 or 90 days as you spake about the fire hazard left behind there is fire rangers that keeps the fire out and your yong timber will have a better to grow after the old timber is cut so let me hear from you at once. Yours truly Bon Foster, Bethel, Okla."

Since the assumption on the part of Foster that the landowner had offered to sell was unwarranted, this letter and the contract therewith inclosed can only be con-

strued as a renewal of the offer on different terms. The renewed offer prescribed the manner of its acceptance. It directed Askren to send the contract through banking channels accompanied by a draft for the amount of the contract price. It did not contemplate acceptance by mailed communication. If an offer prescribes the manner of acceptance, it must be accepted in the manner prescribed (Williston on Contracts, par. 76, vol. 1, p. 132; see, also, sec. 9428, O. S. 1931), for an acceptance must in every respect meet and correspond with the offer. St. Louis Smelting & Ref. Co. v. Nix, 101 Okla. 197, 201, 224 P. 982. Of course, a mere suggestion as to manner of acceptance contained in an offer may not exclude other equally appropriate methods. Williston on Contracts, par. 76, supra. But an equally appropriate method in this case would at least require some act which would result in a delivery of the executed contract, which, it was suggested, should be sent through banking channels.

To this renewed offer Askren responded:

"Detroit Mich July 27th '36
"Mr. Bon Foster
    "Bethel Okla
"Dear Sir.
    "I am returning contract. I may not understand it properly but I am marking around some of my objections in contract. When I sign the contract I am signing a receipt for the money which I have not got. I cannot protect the timber at present but will not sell or lease the land inside of 1 year. I want the contract more specific. I will give you 1 year to remove timber after which I want all tramways removed and all rights terminated and no timber disturbed under 10 inches. I don't understand about the draft you mention. Can you make this a little plainer to me. Yours truly, J. W. Askren R. 1, Box 1050 Detroit Mich."

This letter contains an objection to one feature of the proposed written contract and a request that certain other features of the contract be reworded for clarification. The copy of the contract returned with the letter as "marked" by Askren was introduced in evidence. The purchase price as fixed in the contract was $700 and the kind of timber to be cut and removed was described as timber of "whatsoever kind and character" on the premises, but at another place defendant agreed not to cut "anything under 10 inches." The letter invites a resubmission of Foster's previous offer. Foster changed the contract wording portions thereof and resubmitted his offer by inclosing the redrafted formal contract with the following letter:

"Bethel, Okla 8/1/'36
"Mr. J. W. Askren
    "R. 1, Box 1050
        "Detroit, Mich.
"Dear Sir:-
    "Enclosed please find timber contract covering your land here in McCurtain County, Okla. You will note, from reading the contract, that it is only for a period of one year and that I am to pay you the sum of $700.00.
    "Please go to your local banker and let him explain to you the purpose of the draft and let him help you in getting your money. Take this contract with you and explain that I have made arrangements with the Idabel National Bank, Idabel, Okla. for the draft to be honored. He will send the draft to the Idabel Nat'l Bank here and the contract also and the bank here will not give me the contract until the draft is cleared and you get your money.
    "There will be no tram ways or anything like that erected on the land and, under the contract, all rights to the timber will terminate in one (1) years time.
    "No timber under 10 inches will be damaged and to assure you of that you may attach this letter to the contract and make it a part of the same.
    "I believe this letter explains those things that are a doubt in your mind with the exception of the draft and as I say, go to your banker and let him explain that to you. Very truly yours Bon Foster Bethel, Okla."

This letter, constituting a renewal and continuation of the offer, did not prescribe a different manner of acceptance. In fact, it refers again to the proposed handling of the matter through the bank by direct reference to the banker, and thus, in effect and substance, redesignates and reiterates the directions as to manner of acceptance contained in the previous letter, namely, by executing the formal contract and sending it through banking channels with draft attached.

Was the contemplated act of acceptance performed? Was the renewed offer accepted? These questions must be answered in the negative. Instead of depositing the draft and formal contract for clearance, Askren wrote:

"Detroit Mich Aug 5th 36
"Mr. Bon Foster
    "Bethel Okla.
"Dear Sir.
    "I went to my banker and got the draft

made out but he said I should have a contract signed by you. So I am holding up the contract and draft until I get my contract as advised by him. Yours truly, J. W. Askren R. 1, Box 1050 Detroit, Mich."

By this letter Askren in effect said,

"Upon advice of my banker I am not doing the act designated by the terms of your offer as an acceptance thereof and will not do so until I get a copy of the formal contract signed by you."

But by reasonable and fair implication he also said: "All the terms submitted by you are satisfactory to me. I only desire a copy of the formal contract for my own future protection. If you will send me such a copy, I will deposit for clearance the contract and draft." Thus for the first time he made a counter offer. It constituted a new proposal.

Section 9430, O. S. 1931, provides:

"An acceptance must be absolute and unqualified, or must include in itself an acceptance of that character which the proposer can separate from the rest, and which will include the person accepting. A qualified acceptance is a new proposal."

The new proposal contemplated the act of mailing the contract as an acceptance. Upon receipt of this latter letter Foster mailed the contract. Were the parties then bound?

In Western Roofing Tile Co. v. Jones, 26 Okla. 209, 109 P. 225, supra, we said in syllabus 1:

"Where parties to an agreement make its reduction to writing and signing a condition precedent to its completion, it will not be a contract until this is done, and this is true although all the terms of the contract have been agreed upon. But where parties have assented to all the terms of the contract, and they are fully understood in the same way by each of them, the mere reference in conjunction therewith of a future contract in writing will not negative the existence of a present contract."

Dealing with this same subject, Williston in his work on Contracts, says (vol. 1, p. 37-39):

"In the absence of such an expressed intent, mutual assent, informally given, to make an exchange of acts or promises is sufficient. Consequently, if such assent exists, to avoid the conclusion that a contract has been formed, it must be found as a fact that the parties impliedly agreed that until the writing was executed they should not be bound. The burden of establishing this implication of fact is on the one who denies the existence of a contract. The

decisions, although not all perfectly consistent, generally conform to this test."

Upon consideration of the foregoing authorities, we conclude that upon acceptance of the counter offer by mailing the contract the parties became mutually bound. The details of the transaction were fully agreed upon. See, also, Day v. Ferguson, 129 Okla. 22, 263 P. 126; Pierce Petroleum Corp. v. Hales, 147 Okla. 42, 294 P. 160.

Foster notified Askren by wire on August 19, 1936, that he (in reliance on the correspondence) had entered and was cutting timber. Subsequently, there were two other communications which neither added to nor destroyed the contract previously made. Askren knew of the entry when he on August 28th attempted to sell the timber, or, rather, the right to cut and remove it, for a slightly higher price to the plaintiff herein.

Since our determination of the sole question presented is favorable to the defendant, our decision is one of affirmance.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, CORN, GIBSON, and HURST, JJ., concur. PHELPS, J., absent.