**SIGMA RESOURCES CORPORATION, Appellant,**

v.

**NORSE EXPLORATION, INC., Norse Petroleum (U.S.), Inc., Norse Petroleum, A.S., Coda Energy, Inc., and Warlock Petroleum Corporation, Appellee.**

**No. 77789.**

Court of Appeals of Oklahoma, Division No. 3.

Nov. 24, 1992.

Rehearings Denied Feb. 9, 1993.

Certiorari Denied April 27, 1993.

**765**

Thomas A. Wallace, Oklahoma City, for appellant.

Gary W. Davis, Marie Weston Evans, Crowe & Dunlevy, Oklahoma City, for appellees Norse Exploration, Inc., Norse Petroleum (U.S.), Inc., and Norse Petroleum, A.S.

Donald C. Templin, Stacy E. Sallee, Haynes and Boone, L.L.P., Dallas, TX, for appellees CODA Energy, Inc. and Warlock Petroleum Corp.

## OPINION

BAILEY, Presiding Judge:

Appellant Sigma Resources Corporation (Sigma or Plaintiff) seeks review of the Trial Court's order granting summary judgment to Appellees Norse Exploration, Inc., Norse Petroleum (U.S.), Inc., Norse Petroleum, A.S. (Norse), CODA Energy, Inc. (CODA) and Warlock Petroleum Corporation (Warlock or collectively Defendants) in Plaintiff's action against Defendants to recover actual and punitive damages for alleged breach of joint venture/partnership agreement, breach of fiduciary duty, misappropriation of business opportunity, tortious interference with contract and conspiracy. In this appeal, Plaintiff asserts error of the Trial Court in granting summary judgment to Defendants in the presence of material facts in controversy concerning existence of an alleged joint venture between Norse and Sigma.

Briefly stated, Sigma and one of the Norse entities, Norse Petroleum (U.S.), Inc., sought to purchase the mineral assets of a bankrupt. In March 1984, Sigma and Norse reached an agreement for purchase of the bankrupt's assets. Norse memorialized the agreement by letter to Sigma, therein delineating preliminary agreement to some terms and anticipating execution of a more complete agreement on other terms within a short time.[1] However, Sigma's financing fell through, and while Sigma searched for other financing, Norse, CODA and Warlock apparently entered an

---

1. The letter agreement, dated March 14, 1984, provided *inter alia:*
   —for Norse's purchase from Sigma of sixty-five percent (65%) of bankrupt's "Exhibit A" wells and interests, and fifty percent (50%) of bankrupt's "Exhibit B" wells;
   —execution of the purchase agreement for the bankrupt's mineral assets "on or before March 29, 1984";
   —"closing date under the purchase agreement ... no later than 30 days after issuance of a final non-appealable order" in the bankrupt's bankruptcy action;
   —"If closing does not occur on or before June 30, 1984, the purchase agreement ... shall expire"; and
   —at closing, entry by Sigma and Norse into a "mutually acceptable operating agreement and joint venture agreement."

The letter agreement further specifically provided:
   In addition, the to-be-negotiated agreement will contain the following provisions:
   1. Norse shall have the right to purchase a maximum of 65 percent of any leases, ..., etc., acquired at the price paid by Sigma within the joint area of interest.....
   2. Norse shall have the first right of refusal to purchase leasehold interests owned by Sigma ... within the mutual area of interest which Sigma desires to sell....
   3. Sigma shall be designated operator pursuant to the joint operating agreement and venture manager of the joint venture.
   4. The sale of the [Exhibit B] wells will be undivided and will be managed under the joint venture agreement.

agreement for purchase of the bankrupt's assets without Sigma's participation.

Although the bankrupt's creditor's committee had apparently previously approved the Sigma/Norse offer, the committee subsequently accepted the Norse/CODA/Warlock offer. Sigma then filed suit against Norse, CODA and Warlock, claiming existence of a valid joint venture agreement between Sigma and Norse, and Defendants' wrongful, conspiratorial acts to deprive Sigma of the benefits thereof.[2]

After substantial discovery, Defendants moved for summary judgment, arguing insufficiency of the letter agreement under the Statute of Frauds to establish a joint venture. Defendants also presented evidence arguably establishing expiration of the Norse/Sigma letter agreement by its own terms. Defendants thus asserted Sigma's commensurate failure to state actionable claims for breach of joint venture agreement, breach of fiduciary duty, usurpation with business opportunity, and tortious interference with contract against Defendants. Sigma objected, presenting evidence developed during discovery argued to establish a controversy of material facts concerning existence of a joint venture between Norse and Sigma under the letter agreement for purchase and operation of the bankrupt's mineral interests, breach of the agreement, and consequently, Defendants' potential liability under the theories plead.

Upon consideration of the briefs and materials submitted, the Trial Court granted summary judgment to Defendants, finding:

1. Defendant, Norse Exploration, A.S. was never a party or signatory to any letter of intent to enter into an agreement.

2. That no Joint Venture Agreement was ever formulated or signed by any of the Defendants and Sigma.

3. That the acts of submitting proposals to the Creditors Committee for purchase of the Bankrupt's assets is clearly desired and encouraged by the Bankruptcy Court in order to provide the maximum return to creditors of the Bankrupt estate.

4. That the Statute of Frauds in the State of Oklahoma require [sic] an agreement such as the suggested Joint Venture Agreement be in writing and executed by the parties.

5. There was no fiduciary relationship between Sigma and Norse as there was no Joint Venture Agreement to establish such a relationship.

6. Because no fiduciary relationship existed there can be no misappropriation of business opportunity.

7. There was no conspiracy between Norse, [CODA] and Warlock.

Sigma now appeals, again asserting material facts in controversy concerning existence of a joint venture, precluding summary judgment.

■■■ In order to establish a joint venture, a party must show (1) a joint interest in the subject matter, (2) an express or implied agreement to share in the profits and losses, and (3) conduct showing cooperation in the venture.[3] As Justice Opala noted:

> The essential test in determining the existence of a joint venture is whether the parties intended to establish such a relation. In the absence of an expressed agreement setting forth the relationship, the status may be inferred from the conduct of the parties in relation to themselves and to third parties.

**2.** Sigma originally filed suit against Norse, CODA and Warlock in the District Court of Harris County Texas. Norse filed a similar suit against Sigma in the District Court of Oklahoma County and in the bankrupt's action in the United States District Court for the Western District of Oklahoma. Upon agreement of all parties, Sigma dismissed its Texas action, Norse dismissed its action in the bankruptcy court, and consolidated the parties' actions in the Oklahoma case. Upon consolidation and motion of

Sigma, the Trial Court realigned Sigma as plaintiff and Norse, CODA and Warlock as defendants.

**3.** *See, e.g., Martin v. Chapel, Wilkinson, Riggs and Abney,* 637 P.2d 81, 85 (Okl.1981); *King–Stevenson Gas & Oil Co. v. Texam Oil Corp.,* 466 P.2d 950· (Okl.1970); *Oklahoma Co. v. O'Neil,* 440 P.2d 978 (Okl.1968).

. . . .

. . . In short, the acts and conduct of the parties *inter se* speak more strongly than the expressed declarations of the buyers as to the existence of their status as joint venturers.

*Martin v. Chapel, Wilkinson, Riggs and Abney,* 637 P.2d at 81.[4]

Thus, a joint venture agreement need not be in writing,[5] and as in other cases generally, an agreement to agree to more specific terms at some time in the future may nevertheless form an enforceable contract.[6] Where the facts are in dispute, the existence of a joint venture ordinarily presents a question for determination by the trier of fact, the jury or the court as the case may be.[7]

■ Under these authorities, considering the materials submitted in support of/opposition to summary judgment, and viewing those materials in the light most favorable to Sigma as we must,[8] we find material facts in controversy concerning existence of the alleged joint venture, precluding grant of summary judgment. In the present case, the parties presented evidence on summary judgment showing (1) the letter agreement between Norse and Sigma for purchase of the bankrupt's assets, arguably establishing a joint venture, and (2) conduct of both Norse and Sigma after apparent expiration of the letter agreement, arguably evincing a continuing intent to proceed with the joint venture purchase. The fact that Norse and Sigma left other specifics of the joint venture for later agreement, or that the parties never consummated the more specific agreement, does not vitiate the parties' letter agreement for non-compliance with the Statute of Frauds.[9] Further, evidence appears in the record showing that CODA and/or Warlock knew of the Sigma/Norse agreement (although unsure of its continued validity) at the time of CODA/Warlock's entry into a similar agreement with Norse, in our opinion raising substantial questions of fact concerning CODA and Warlock's intent vis-a-vis the Sigma/Norse agreement, precluding summary judgment on Sigma's claims of conspiracy, usurpation/misappropriation of opportunity and interference with contract.[10] We therefore hold the Trial Court erred in granting summary judgment to Defendants.

The order of the Trial Court granting summary judgment to Defendants is therefore REVERSED, and the cause REMANDED for further proceedings.

HANSEN, V.C.J., and HUNTER, J., concur.

4. *See also, Gragg v. James,* 452 P.2d 579 (Okl. 1969).

5. *Martin,* 637 P.2d at 81 (status as joint venturers may be inferred from conduct); *McLaughlin v. Laffoon Oil Co.,* 446 P.2d 603 (Okl.1968) (oral agreement between geologist, charged under the agreement to locate and recommend potential properties, and oil company, charged to acquire and develop the properties, under which agreement parties agreed to share profits, created joint venture not subject to writing requirement of statute of frauds); *Alma Investment Corp. v. Wilson,* 385 P.2d 501 (Okl.1963) (memorandum of contract required by statute of frauds may consist of several writings related to same subject matter, and/or of a writing signed by one party, and another writing or writings expressly referred to).

6. *See, e.g., East Central Oklahoma Elec. Cooperative, Inc. v. Oklahoma Gas & Electric Co.,* 505 P.2d 1324 (Okl.1973); *Suttle v. Chadwell,* 196 Okl. 298, 164 P.2d 880 ('1945); *Pierce Petroleum Corp. v. Hales,* 147 Okl. 42, 294 P. 160 (1930).

7. *Floyd v. Dodson,* 692 P.2d 77 (Okl.App.1984); *McKeel v. Mercer,* 118 Okl. 66, 246 P. 619 (1926).

8. *See, e.g., Ross, by and through Ross v. City of Shawnee,* 683 P.2d 535 (Okl.1984);

9. On this issue, there appears other evidence on summary judgment arguably demonstrating agreement between Norse's representative and Sigma, although not executed by Norse, to the terms of the more specific contract.

10. *MAC Adjustment, Inc. v. Property Loss Research Bureau,* 595 P.2d 427, 428 (Okl.1979); *Del State Bank v. Salmon,* 548 P.2d 1024 (Okl. 1976); *Nat'l. Life & Accident Ins. Co. v. Wallace,* 162 Okl. 174, 21 P.2d 492 (1933).